IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Robert H. PAUL, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Robert H. PAUL, Respondent.

Supreme Court

*No. 2006AP2132–D. Decided January 23, 2007.*

2007 WI 11

(Also reported in 726 N.W.2d 253.)

¶ 1. PER CURIAM. We review the stipulation filed by Attorney Robert H. Paul and the Office of Lawyer Regulation (OLR) pursuant to SCR 22.12[1] concerning Attorney Paul's professional misconduct in his handling of personal injury and worker's compensation actions. The parties stipulated that the appropriate discipline to impose is the suspension of Attorney Paul's license to practice law in Wisconsin for 60 days.

¶ 2. We approve this stipulation and adopt the stipulated facts and conclusions of law. We agree that the seriousness of Attorney Paul's misconduct warrants

---

[1] SCR 22.12 states in relevant part:  Stipulation

(1) The director may file with the complaint a stipulation of the director and the respondent to the facts, conclusions of law regarding misconduct, and discipline to be imposed. The supreme court may consider the complaint and stipulation without the appointment of a referee.

(2) If the supreme court approves a stipulation, it shall adopt the stipulated facts and conclusions of law and impose the stipulated discipline.

the suspension of his license to practice law. We also accept the parties' stipulation that a 60–day suspension is appropriate discipline. We further agree that Attorney Paul should be required to pay the costs of the proceeding, which are $472.20 as of November 6, 2006.

¶ 3.   Attorney Paul was admitted to practice law in Wisconsin in 1998. He currently resides in Chicago, Illinois. His license to practice law has been suspended since June 6, 2005, due to his failure to comply with mandatory continuing legal education (CLE) requirements.

¶ 4.   The eight counts of misconduct detailed in the parties' stipulation all arise out of Attorney Paul's representation of D.T. In March 2000 D.T. retained Attorney Paul to represent her in a personal injury action and a worker's compensation claim resulting from injuries she sustained in December 1999 from a horse at Heartland Stables in Custer, Wisconsin. The stables were owned and operated by William and Elizabeth Foss. D.T.'s medical expenses exceeded $100,000. The worker's compensation claim was based on the theory that D.T., who was a college student at the time, worked at Heartland Stables in lieu of paying board for her two horses.

¶ 5.   In August 2000 Attorney Paul filed a personal injury suit on D.T.'s behalf against the Fosses and Heartland Stables. Discovery was conducted. At D.T.'s deposition she acknowledged she was aware of the statutory notices regarding an equine owner's liability that were posted at the stables.

¶ 6.   In July 2001 Attorney Paul filed D.T.'s "uninsured employer's claim form" with the Department of Workforce Development, Worker's Compensation Division. In his letter, Attorney Paul stated that a stipulation had been entered in the personal injury suit because the equine statute meant that D.T. did not have

631

a claim against the Fosses for personal injury liability. In fact, no such stipulation had been entered.

¶ 7.   On August 22, 2001, the personal injury suit was dismissed with prejudice pursuant to a stipulation signed by Attorney Paul, acting on D.T.'s behalf, on August 14, 2001. Attorney Paul did not seek D.T.'s permission prior to signing this stipulation, did not inform her that he had filed the stipulation dismissing her case, and did not provide her with a copy of the stipulation.

¶ 8.   In correspondence dated December 17, 2002, Attorney Paul advised the worker's compensation division that the insurer had denied D.T.'s claims for injuries and he requested a hearing on whether D.T. was employed at the stables and was paid more than $500 per quarter at the time of the accident. Attorney Paul did not inform D.T. that the insurer had denied her claim.

¶ 9.   Between December 17, 2002, and June 12, 2003, Attorney Paul provided the worker's compensation division with D.T.'s medical bills, sent a medical authorization to the firm representing the uninsured employer's fund, and provided the worker's compensation division with a breakdown of medical costs related to D.T.'s injuries. In May and June 2003 the firm representing the uninsured employer's fund wrote to Attorney Paul requesting that D.T. sign a consent and authorization of disclosure of confidential information form, provide a list of medical providers form and an employment authorization form. Attorney Paul failed to timely respond to those letters and failed to timely provide D.T. with the forms she was to complete. The firm representing the fund wrote to Attorney Paul again in September and October 2003 requesting information. Attorney Paul failed to respond.

![black redaction bar]

¶ 10.   On November 7, 2003, the firm representing the fund wrote to the worker's compensation division asking that the matter be dismissed due to D.T.'s failure to cooperate with the fund's investigation. On November 19, 2003, the administrative law judge (ALJ) advised Attorney Paul to respond or he would assume that Attorney Paul did not object to the dismissal of the case. Attorney Paul responded to the request on December 3, 2003.

¶ 11.   Due to D.T.'s inability to communicate with Attorney Paul, D.T. scheduled a meeting with Attorney Paul and her uncle, W.G. At the meeting Attorney Paul discussed with D.T. and W.G. the need to prove D.T. had received sufficient compensation to qualify for worker's compensation benefits. D.T. and W.G. provided Attorney Paul with names and contact information. During the meeting Attorney Paul informed W.G. that he "was working on getting the worker's comp case approved and hoped that would be faster than the PI case." Attorney Paul did not inform D.T. or W.G. that the personal injury suit had been dismissed.

¶ 12.   In correspondence to the OLR dated June 20, 2005, Attorney Paul denied that he discussed the personal injury case with W.G. during the 2003 meeting. Attorney Paul also informed the OLR he did not hear from either W.G. or D.T. after leaving a message for W.G. following the 2003 meeting. However, after the meeting W.G. made six or eight phone calls to Attorney Paul, leaving messages with D.T.'s phone number and asking Attorney Paul to contact D.T. Attorney Paul failed to contact D.T. after receiving those messages. Between April and August 2004 D.T. attempted to contact Attorney Paul on numerous occasions and left him numerous detailed phone messages but could never reach him.

¶ 13. D.T. contacted Attorney Christopher Van Wagner to assist her in attempting to reach Attorney Paul. Between September 27, 2004, and October 6, 2004, Attorney Van Wagner attempted to contact Attorney Paul by telephone but never received a return phone call. On September 30, 2004, Attorney Van Wagner e-mailed Attorney Paul at the e-mail address listed for him in the 2004 State of Wisconsin bar directory. Attorney Paul responded by telephone to Attorney Van Wagner by stating that "he had closed up shop, and that he was now living in Illinois during the week to assist his ailing father." Attorney Paul had not informed D.T. that he had moved to Illinois.

¶ 14. Attorney Paul informed Attorney Van Wagner that after D.T.'s deposition the circuit court threw out her personal injury action. At first Attorney Paul indicated the dismissal had been involuntary but he later retracted that statement and said the case had been voluntarily dismissed. This was the first time D.T. learned that her personal injury suit had been dismissed.

¶ 15. In an October 7, 2004 e-mail to D.T., Attorney Van Wagner recounted his conversation with Attorney Paul, saying Attorney Paul asserted that the worker's compensation claim had been denied due to questions about whether or not D.T. was working at the stables at the time of the injury; that Attorney Paul said he had appealed to the State and was awaiting a decision; and that Attorney Paul later informed Attorney Van Wagner he had lost the appeal and was going to seek a rehearing. Attorney Paul never advised D.T. that the worker's compensation claim had been denied, that he appealed and lost, or that he was seeking a rehearing.

¶ 16. In November 2004 D.T. sent Attorney Paul a certified letter requesting her file. The letter was returned because Attorney Paul did not sign for it.

¶ 17.   The worker's compensation division scheduled a hearing in D.T.'s case for January 18, 2005. By letter dated November 12, 2004, the division notified Attorney Paul and D.T. of the hearing date. Attorney Paul took no action on D.T.'s worker's compensation claim between December 3, 2003, and December 17, 2004. On December 17, 2004, the ALJ assigned to D.T.'s case dismissed it without prejudice due to lack of prosecution and the department's inability to contact either D.T. or Attorney Paul. Attorney Paul failed to notify D.T. of the dismissal.

¶ 18.   On December 20, 2004, Attorney Lisa Pierobon Mays, as D.T.'s successor counsel, sent a letter to the worker's compensation division, signed by D.T., requesting a copy of D.T.'s file. On December 21, 2004, Attorney Paul faxed a copy of an e-mail to the ALJ which he asserted he had sent to the ALJ on December 7, 2004. In the letter Attorney Paul apologized for the ALJ's inability to reach him, indicated his father had suffered a medical emergency, and provided his Illinois contact information.

¶ 19.   On January 3, 2005, the ALJ rescinded the December 17, 2004 order, dismissing the worker's compensation case for nonprosecution and reinstated D.T.'s application. In January 2005 Attorney Mays e-mailed Attorney Paul notifying him about D.T.'s decision to hire Attorney Mays. Attorney Mays requested D.T.'s file. Attorney Paul failed to contact either D.T. or Attorney Mays.

¶ 20.   On March 18, 2005, D.T. sent Attorney Paul a certified letter again requesting her file. Attorney Paul again failed to respond. On April 21, 2005, after receiving correspondence from the OLR, Attorney Paul forwarded D.T.'s file to Attorney Mays. Due to Attorney Paul's failure to pursue D.T.'s claims, Attorney Paul

caused a delay resulting in D.T.'s medical providers filing suit against her for her medical bills, which resulted in the possibility of D.T. filing for bankruptcy, as well as a delay in her ability to obtain additional surgery for her injuries.

¶ 21. The parties' stipulation sets forth eight counts of misconduct with respect to Attorney Paul's representation of D.T.:

> COUNT ONE: [Attorney] Paul failed to abide by a client's decisions concerning the objectives of representation and consult with the client as to the means by which they are to be pursued, in violation of SCR 20:1.2(a).[2]
>
> COUNT TWO: [Attorney] Paul failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.4(a).[3]
>
> COUNT THREE: [Attorney] Paul failed to keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information, in violation of SCR 20:1.4(a).

---

[2] SCR 20:1.2(a) provides: Scope of representation

(a) A lawyer shall abide by a client's decisions concerning the objectives of representation . . . and shall consult with the client as to the means by which they are to be pursued. A lawyer shall inform a client of all offers of settlement and abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case or any proceeding that could result in deprivation of liberty, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

[3] SCR 20:1.4(a) states that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

COUNT FOUR: [Attorney] Paul failed to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation, in violation of SCR [20:]1.4(b).[4]

COUNT FIVE: [Attorney] Paul failed, upon termination of representation, to take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned, in violation of SCR 20:1.16(d).[5]

COUNT SIX: [Attorney] Paul knowingly made a false statement of fact or law to a tribunal, in violation of SCR 20:3.3(a)(1).[6]

COUNT SEVEN: [Attorney] Paul engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c).[7]

---

[4] SCR 20:1.4(b) states that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[5] SCR 20:1.16(d) provides: Declining or terminating representation

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

[6] SCR 20:3.3(a)(1) provides that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal."

[7] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

COUNT EIGHT: [Attorney] Paul in the course of the investigation, made a misrepresentation in a disclosure, in violation of SCRs 20:8.4(f)[8] and 22.03(6).[9]

¶ 22. As noted above, the stipulation states that the parties agree that an appropriate level of discipline is a 60–day suspension of Attorney Paul's license to practice law in Wisconsin. The stipulation states that its terms were not bargained for or negotiated between the parties. Attorney Paul represents that he fully understands the misconduct allegations, he fully understands the ramifications should the court impose the stipulated level of discipline, he fully understands his right to contest the matter, he fully understands his right to consult with and retain counsel, and his entry into the stipulation is made knowingly and voluntarily.

¶ 23. We adopt the findings of fact and conclusions of law to which the parties have stipulated concerning Attorney Paul's professional misconduct. We determine that the seriousness of the misconduct warrants the suspension of Attorney Paul's license to practice law for 60 days. We also conclude that Attorney Paul should be required to pay the costs of the proceeding.

---

[8] SCR 20:8.4(f) provides that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

[9] SCR 22.03(6) provides the "[i]n the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

¶ 24. IT IS ORDERED that the license of Robert H. Paul to practice law in Wisconsin is suspended for a period of 60 days, effective the date of this order. This stipulation has no effect on Attorney Paul's administrative suspension arising out of his failure to comply with mandatory CLE requirements.

¶ 25. IT IS FURTHER ORDERED that Attorney Robert H. Paul comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 26. IT IS FURTHER ORDERED that within 60 days of the date of this order Robert H. Paul pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified, and absent a showing to this court of his inability to pay the costs within that time, the license of Robert H. Paul to practice law in Wisconsin shall remain suspended until further order of the court.