# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP1400-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Melinda R. Alfredson, Attorney at Law: |
| | Office of Lawyer Regulation, |
| | Complainant, |
| | v. |
| | Melinda R. Alfredson, |
| | Respondent. |

---

DISCIPLINARY PROCEEDINGS AGAINST ALFREDSON

---

| | |
|---|---|
| OPINION FILED: | February 1, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ABRAHAMSON, J. concurs (opinion filed). |
| DISSENTED: | |
| NOT PARTICIPATING: | |

---

ATTORNEYS:

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2016AP1400-D

STATE OF WISCONSIN      :      IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Melinda R. Alfredson, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant,**

      **v.**

**Melinda R. Alfredson,**

      **Respondent.**

**FILED**

**FEB 1, 2017**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. We review a stipulation filed pursuant to Supreme Court Rule (SCR) 22.12 by the Office of Lawyer Regulation (OLR) and Attorney Melinda R. Alfredson. In the stipulation, Attorney Alfredson admits that she committed professional misconduct, and she agrees with the OLR's request that her license to practice law in Wisconsin be suspended for a period of 60 days. Attorney Alfredson also agrees that she

should pay restitution totaling $1,809.71 to two parties, divided as set forth below.

¶2 After careful review of the matter, we accept the stipulation and impose the requested discipline. Because Attorney Alfredson entered into a comprehensive stipulation before the appointment of a referee, we do not require her to pay the costs of this proceeding.

¶3 Attorney Alfredson was admitted to practice in Wisconsin in 2009. She has no prior disciplinary history.

¶4 In July 2016, the OLR filed a complaint alleging that Attorney Alfredson had engaged in sixteen counts of misconduct arising out of her representation of two clients (K.H. and N.W.), her violations of trust account rules, and her failure to cooperate with the OLR's investigation into these matters. In September 2016, the OLR and Attorney Alfredson filed a stipulation pursuant to SCR 22.12. We take the following facts from the parties' stipulation.

CLIENT K.H.

¶5 In January 2013, K.H. hired Attorney Alfredson to represent him regarding two claims he had unsuccessfully pursued with the Social Security Administration (SSA). Attorney Alfredson filed an appeal on behalf of K.H. and attended a video hearing with K.H. before a SSA Administrative Law Judge (ALJ) in May 2013. In June 2013, the ALJ denied K.H.'s claims.

2

¶6 K.H. and Attorney Alfredson received a notice of the ALJ's decision, which included instructions that a written appeal must be filed within 60 days of June 30, 2013. K.H. instructed Attorney Alfredson to file an appeal. Although Attorney Alfredson claimed to the OLR that she sent a letter to the local SSA office on August 9, 2013, informing the SSA of K.H.'s intent to appeal, the SSA office received no such letter.

¶7 On August 13, 2013, Attorney Alfredson drafted an appeal in letter form and reviewed the draft with K.H. K.H. requested revisions to the appeal letter. Although Attorney Alfredson claimed to the OLR that she made K.H.'s requested revisions and submitted the appeal letter to the local SSA office on August 13, 2013, the SSA office received no such letter.

¶8 Between August 2013 and October 2014, K.H. asked Attorney Alfredson to check the status of the appeal multiple times. Although Attorney Alfredson claimed to the OLR that she contacted the local SSA office multiple times, and that each time she was told the appeal was open and pending, the SSA office has no documentation of any phone calls from Attorney Alfredson. The SSA's file also shows that no appeal was filed and that the case was closed. Had Attorney Alfredson called the SSA office to request the status of K.H.'s case, she would have been informed that the case was closed.

¶9 In October 2014, K.H. contacted the SSA office to check on the status of his appeal. He was told that the case was closed because no appeal was filed.

3

¶10 K.H. left Attorney Alfredson a voicemail informing her that the SSA office had closed his file. Attorney Alfredson claimed to the OLR that she called the SSA office to check on the status of K.H.'s appeal, and that she was told that the matter was still open and that she should file the appeal again if there was uncertainty about whether the appeal had been filed. Attorney Alfredson also claimed to the OLR that she filed a duplicate copy of the appeal letter on October 20, 2014. However, the SSA office has no documentation of any phone calls from Attorney Alfredson in October 2014, nor of an appeal letter from Attorney Alfredson dated October 20, 2014. Despite requests for a copy of the purported appeal letter, Attorney Alfredson did not provide it to the OLR.

¶11 In the stipulation, Attorney Alfredson admits that she committed the following counts of professional misconduct during her representation of K.H.:

- Count One: By failing to pursue the appeal as agreed upon with K.H., Attorney Alfredson violated SCR 20:1.3.[1]

- Count Two: By failing to provide accurate case status information upon K.H.'s request, Attorney Alfredson violated SCR 20:1.4(a)(3) and (4).[2]

---

[1] SCR 20:1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

[2] SCRs 20:1.4(a)(3) and (4) provides: "A lawyer shall (3) keep the client reasonably informed about the status of the matter," and "(4) promptly comply with reasonable requests by the client for information."

4

- Count Three: By providing false case status information to K.H., Attorney Alfredson violated SCR 20:8.4(c).[3]

- Count Four: By providing false information regarding the filing of the appeal to the OLR, Attorney Alfredson violated SCR 22.03(6),[4] enforced via SCR 20:8.4(h).[5]

## CLIENT N.W.

¶12 In mid-April 2014, N.W. retained Attorney Alfredson to represent him in a custody and paternity matter. This matter arose after a domestic incident occurred between N.W. and the mother of his children, D.N. As a result of the incident, N.W. was taken into custody. D.N. moved to the State of Oregon with the children.

¶13 D.N. filed for, and obtained, a restraining order against N.W. After being served with the restraining order, N.W. entered into a retainer contract with Attorney Alfredson,

---

[3] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[4] SCR 22.03(6) provides: "In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[5] SCR 20:8.4(h) provides: "It is professional misconduct for a lawyer to fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 22.03(6)."

which provided that she would represent him on custody and placement issues for an advanced fee of $1,500. N.W. also entered into a fee agreement with Attorney Alfredson, which provided that the advanced fee would be placed into Attorney Alfredson's business account. N.W.'s mother made an initial payment of $400 by credit card, which was deposited into Attorney Alfredson's business account. The remaining $1,100 of the advanced fee was later paid to Attorney Alfredson and deposited into her business account.

¶14 Attorney Alfredson drafted court papers, including a petition for custody, placement, and child support, but did not file the paperwork in a Wisconsin circuit court until almost three months later, in July 2014. Attorney Alfredson told the OLR that she delayed filing the paperwork because she did not know where to serve D.N.

¶15 Attorney Alfredson and N.W. never discussed the delay in filing the legal action. Had Attorney Alfredson told N.W. that she did not know where to serve D.N., N.W. would have provided Attorney Alfredson with an address at which he had recently and successfully served D.N. in a different legal matter. In addition, both N.W. and Attorney Alfredson were aware of D.N.'s address in Oregon because it was included on the restraining order that had been served upon N.W.

¶16 After filing the petition for custody, placement, and child support, Attorney Alfredson made no effort to obtain service on D.N. Nevertheless, she claimed that a process server in Oregon had twice attempted to obtain service on D.N., and she

6

billed N.W. $75 for a service fee in August 2014. In a letter to the OLR, Attorney Alfredson claimed that "service was not delayed" until August 2014; rather, that was "simply when the bill was paid." In a subsequent letter to the OLR, Attorney Alfredson stated that she never received a bill from a process server and that she was unable to provide proof of attempted service.

¶17 In late August 2014, N.W. requested that Attorney Alfredson refund the full advanced fee of $1,500. Attorney Alfredson responded that she was unable to return the fee and that "monies have to be transferred from the trust account (where your retainer sits) and a grace period is required to be waited." This statement was false, as the funds had been deposited into Attorney Alfredson's business account.

¶18 On August 28, 2015, Attorney Alfredson sent a letter to N.W. stating that she was terminating her representation of N.W. and closing her file. She did not include in the closing letter any information about the ability to contest the fee.

¶19 During the course of the OLR's investigation, Attorney Alfredson told the OLR in an email that N.W. "never contested" his bill, even though she had sent him "a letter upon closing that stated that he had 30 days to let me know if he contested his bill, per the terms of our retainer agreement." This statement was false, as Attorney Alfredson did not include in the closing letter any information about N.W.'s ability to contest the fee. Moreover, far from having "never contested" his bill, as Attorney Alfredson claimed, N.W. had requested a

7

full refund of the $1,500 advanced fee. Although Attorney Alfredson acknowledged to the OLR during the course of its investigation that N.W. is entitled to some sort of refund, Attorney Alfredson has not refunded any portion of the $1,500 fee to N.W.

¶20 In early September 2014, N.W. asked a different attorney to take over his case in place of Attorney Alfredson. On September 9, 2014, successor counsel sent Attorney Alfredson a Consent and Order for Substitution of Attorneys. On September 14, 2014, N.W. sent Attorney Alfredson an email asking her to "sign off on my case." Attorney Alfredson replied to N.W.'s email by stating that she had received the Consent and Order for Substitution of Attorneys on September 11, 2014, and that she had "turned it in" on September 12, 2014. However, Attorney Alfredson did not file the Consent and Order for Substitution of Attorneys until October 9, 2014. Her signature on the document was dated September 8, 2014——a day before successor counsel sent her the document and three days before she received the document.

¶21 In the stipulation, Attorney Alfredson admits that she committed the following counts of professional misconduct during her representation of N.W.:

- Count Five: By failing to ever serve D.N. and delaying the filing of the court papers in the Wisconsin circuit court case until July 2014, Attorney Alfredson violated SCR 20:1.3.

- Count Six: By failing to provide written notice to N.W. regarding his ability to dispute the fee

8

and participate in binding arbitration to resolve any dispute over the amount of the fee at the termination of her representation, Attorney Alfredson violated SCR 20:1.15(b)(4m)(b).[6]

- Count Seven: Having acknowledged that N.W. is entitled to a refund of an unspecified amount, by failing to refund to N.W. any portion of the advanced fee, Attorney Alfredson violated SCR 20:1.16(d).[7]

- Count Eight: By asserting to N.W. that she was unable to refund an advanced fee because the fee was located in trust when the fee had been

---

[6] SCR 20:1.15(b)(4m)(b) provides:

Upon termination of the representation, the lawyer shall deliver to the client in writing all of the following: (1) a final accounting or an accounting from the date of the lawyer's most recent statement to the end of the representation, regarding the client's advanced fee payment with a refund of any unearned advanced fees; (2) notice that, if the client disputes the amount of the fee and wants that dispute to be submitted to binding arbitration, the client must provide written notice of the dispute to the lawyer within 30 days of the mailing of the accounting; and (3) notice that, if the lawyer is unable to resolve the dispute to the satisfaction of the client within 30 days after receiving notice of the dispute from the client, the lawyer shall submit the dispute to binding arbitration.

[7] SCR 20:1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

9

deposited directly into her business account, Attorney Alfredson violated SCR 20:8.4(c).

- Count Nine: By asserting to the OLR that upon termination of representation she provided N.W. with written notice of his ability to contest the fee when she had not done so, Attorney Alfredson violated SCR 20:8.4(c).

- Count Ten: By charging N.W. a $75 service fee and asserting that she was billing for attempted service when she was never billed by a process server, Attorney Alfredson violated SCR 20:8.4(c).

- Count Eleven: By providing false case status information to N.W. regarding her filing of the Consent and Order for Substitution of Attorneys, Attorney Alfredson violated SCR 20:8.4(c).

- Count Twelve: By failing to timely file the Consent and Order for Substitution of Attorneys, Attorney Alfredson violated SCR 20:1.16(d).

VIOLATIONS OF TRUST ACCOUNT RULES

¶22 Attorney Alfredson practiced as Alfredson Law Offices for just over two years, from mid-November 2013 through late January 2016. Attorney Alfredson was the only attorney affiliated with that firm. Attorney Alfredson maintained a trust account at U.S. Bank.

¶23 During the time that she operated Alfredson Law Offices, Attorney Alfredson represented L.Z. in a divorce matter. L.Z. removed and partially spent about $5,000 from the couple's joint bank account. The circuit court ordered L.Z. to provide an accounting of the money that had been spent, pay $1,000 to the opposing counsel for attorney fees, and deposit

10

the balance of the money in Attorney Alfredson's trust account. Notwithstanding this court order, no funds related to L.Z.'s case were ever deposited in Attorney Alfredson's trust account.

¶24 The opposing counsel in the matter repeatedly tried to contact Attorney Alfredson to determine the status of the accounting and the payment of his $1,000 fee award. Attorney Alfredson did not respond to the opposing counsel's inquiries.

¶25 At a subsequent court hearing, Attorney Alfredson told the opposing counsel that her trust account contained $900 of the funds at issue, which she would in turn forward to him in partial payment of his fee award. This statement was false; Attorney Alfredson had no funds relating to L.Z. in her trust account, and the balance in the account was $11.49.

¶26 Approximately two months after making this statement, Attorney Alfredson disbursed a $900 check from her trust account to opposing counsel, even though there were no funds relating to L.Z. in her trust account and the balance in the trust account at that time was $1.29. The check cleared several days later, after Attorney Alfredson deposited a $284 check from the State Public Defender's Office for earned legal fees to the trust account, as well as $640 in cash.

¶27 Several other trust account discrepancies are at issue in this disciplinary proceeding. Between September 5, 2014, and April 3, 2015, Attorney Alfredson deposited six checks totaling $1,698.29 to her trust account that consisted of earned fees or other funds belonging to her. Between September 5, 2014, and April 15, 2015, Attorney Alfredson made six disbursements

11

totaling $1,783 from her trust account for personal purposes; she wrote one trust account check for her law office rent, and five trust account checks to family members (her father, brother-in-law, and husband). Starting on April 2, 2015, Attorney Alfredson's trust account was overdrawn. Attorney Alfredson did not attempt to rectify the deficit in her trust account. The account had a negative balance of $309.71 until June 3, 2015, when the bank charged off the negative balance and closed the trust account.

¶28 In addition, between September 2014 and April 2015, Attorney Alfredson made seven internet deposits to her trust account via her cell phone, totaling $1,733.29.

¶29 Finally, Attorney Alfredson failed to timely cooperate with the OLR's investigation of the above-described trust account discrepancies. She either failed to respond to the OLR's inquiries, or when she did respond, she provided incomplete or contradictory information.

¶30 In the stipulation, Attorney Alfredson admits that she committed the following counts of professional misconduct:

- Count Thirteen: By depositing at least $1,698.29 in earned fees and personal or law firm funds to her trust account, by paying her law office rent for September 2014 from the trust account, and by issuing a total of five trust account checks to her father, brother-in-law, and husband, Attorney Alfredson deposited and retained funds belonging to herself or her law firm in her client trust account and used those funds to pay personal and

12

business expenses, in violation of SCR 20:1.15(b)(3).[8]

- Count Fourteen: By making seven internet deposits to her trust account, totaling $1,733.29 between September 5, 2014 and April 3, 2015, Attorney Alfredson violated SCR 20:1.15(e)(4)c.[9]

- Count Fifteen: By failing to address the overdrafts of her trust account for more than a month, resulting in the bank having to close the trust account and absorb the negative balance of $309.71, Attorney Alfredson violated SCR 20:8.4(c).

- Count Sixteen: By failing to timely cooperate with the OLR's investigation of her trust account discrepancies, Attorney Alfredson violated SCR 22.03(2)[10] and (6), as enforced via SCR 20:8.4(h).

---

[8] Effective July 1, 2016, substantial changes were made to Supreme Court Rule 20:1.15, the "trust account rule." See S. Ct. Order 14-07, (issued Apr. 4, 2016, eff. July 1, 2016). Because the conduct underlying this case arose prior to July 1, 2016, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2016.

SCR 20:1.15(b)(3) provides: "No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay monthly account service charges, may be deposited or retained in a trust account."

[9] SCR 20:1.15(e)(4)c provides: "A lawyer shall not make deposits to or disbursements from a trust account by way of an Internet transaction."

[10] SCR 22.03(2) provides:

Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the

(continued)

13

¶31 The parties' stipulation provides that Attorney Alfredson does not contest the facts and misconduct alleged by the OLR or the discipline that the OLR is seeking. The stipulation further provides that Attorney Alfredson fully understands the misconduct allegations against her, her right to contest those allegations, and the ramifications that would follow from this court's imposition of the stipulated level of discipline. The stipulation further provides that Attorney Alfredson understands her right to counsel, that she is entering into the stipulation knowingly and voluntarily, and that her entry into the stipulation represents her admission of the misconduct described above. Attorney Alfredson agrees in the stipulation that it would be appropriate for this court to impose a 60-day suspension of her license to practice law in Wisconsin. Attorney Alfredson further agrees that a restitution award in the amount of $1,500 to N.W. and $309.71 to U.S. Bank would be appropriate.

¶32 The OLR filed a memorandum in support of the stipulation. The OLR cited several cases that it claims support its request for a 60-day suspension: In re Disciplinary Proceedings Against Bartz, 2015 WI 61, 362 Wis. 2d 752, 864 N.W.2d 881 (60-day suspension for five counts of misconduct related to one client matter; lawyer had one prior private

response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

14

reprimand); In re Disciplinary Proceedings Against Paul, 2007 WI 11, 298 Wis. 2d 629, 726 N.W.2d 253 (60-day suspension for eight counts of misconduct related to one client matter; lawyer had no prior discipline); In re Disciplinary Proceedings Against Bowe, 2011 WI 48, 334 Wis. 2d 360, 800 N.W.2d 367 (public reprimand for five counts of misconduct related to one client matter; lawyer had one prior private reprimand); In re Disciplinary Proceedings Against Tishberg, 2014 WI 118, 358 Wis. 2d 483, 860 N.W.2d 263 (public reprimand for five counts of misconduct related to one client matter; lawyer had no prior discipline).

¶33 The OLR acknowledges that these cited cases are distinguishable from the facts at hand in certain respects. For example, Attorney Alfredson engaged in significantly more counts of misconduct than the disciplined lawyers in the cited cases; the sixteen misconduct counts here far exceed the five involved in Bartz, Bowe, and Tishberg, and the eight involved in Paul. This case also involves more extensive misconduct——spread over multiple matters——than the cited cases, each of which involved misconduct committed in a single client matter.

¶34 The OLR additionally notes that there are more aggravating than mitigating factors here. On the aggravating side of the ledger, the OLR notes that Attorney Alfredson engaged in dishonest conduct with selfish motives by making misrepresentations to K.H., N.W., and the OLR, each of which was designed to conceal her misconduct or delay refunding unearned fees. The OLR also notes that Attorney Alfredson engaged in a pattern of inappropriate behavior, has expressed no remorse, and

15

appears indifferent to making restitution, having failed to refund any portion of N.W.'s fee advance or to refund U.S. Bank for the overdrafts on her trust account.  Only one factor is present on the mitigating side of the ledger:  the fact that Attorney Alfredson does not have a prior disciplinary record.

¶35 The central issue for this court is whether a suspension greater than the 60-day minimum suspension is in order.  See In re Disciplinary Proceedings Against Grady, 188 Wis. 2d 98, 108-09, 523 N.W.2d 564 (1994) (explaining that generally the minimum length of a license suspension is 60 days).  After careful review, we accept the stipulation and impose the jointly requested sanction of a 60-day suspension of Attorney Alfredson's Wisconsin law license, plus restitution payments of $1,500 to N.W. and $309.71 to U.S. Bank.  We note that this sanction, on these facts, is modest.  We also note that Attorney Alfredson has no prior disciplinary history.  If she had been previously disciplined, a longer suspension would be in order.  We remind Attorney Alfredson that the court may impose progressively severe sanctions when an attorney engages in repeated misconduct.  We impose the sanction to which the parties stipulated with the expectation that Attorney Alfredson will not commit future misconduct subjecting her to additional discipline.

¶36 Because Attorney Alfredson entered into a comprehensive stipulation, thereby obviating the need for the appointment of a referee and a full disciplinary proceeding, we do not impose costs in this matter.

16

¶37 IT IS ORDERED that the license of Melinda R. Alfredson to practice law in Wisconsin is suspended for a period of 60 days, effective March 15, 2017.

¶38 IT IS FURTHER ORDERED that within 60 days of the date of this order, Melinda R. Alfredson shall make restitution in the amount of $1,500 to N.W. and $309.71 to U.S. Bank.

¶39 IT IS FURTHER ORDERED that Melinda R. Alfredson shall comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been suspended.

¶40 IT IS FURTHER ORDERED that compliance with all conditions of this decision is required for reinstatement. See SCR 22.28(2).

17

¶41 SHIRLEY S. ABRAHAMSON, J. *(concurring).* I write separately to point out that this decision seems to continue a trend of this court's imposing too light discipline following the parties' entry into a stipulation. See, e.g., In re Disciplinary Proceedings Against Krogman, 2015 WI 113, 365 Wis. 2d 628, 872 N.W.2d 657 (Abrahamson, J., dissenting); In re Disciplinary Proceedings Against Crandall, 2015 WI 111, 365 Wis. 2d 682, 872 N.W.2d 649 (Abrahamson, J., dissenting).

¶42 I am concerned that the stipulation has become a way to engage in plea (including sentencing) negotiations forbidden by this court. The court has written:

> [W]e note that the OLR is not authorized to plea bargain disciplinary matters, although it may enter into stipulations of fact and law and jointly request the imposition of a certain level of discipline that is supported by the particular facts of a matter. See, e.g., In re Disciplinary Proceedings Against Barrock, 2007 WI 24, ¶5, 299 Wis. 2d 207, 727 N.W.2d 833; In re Disciplinary Proceedings Against Robinson, 2007 WI 17, ¶5, 299 Wis. 2d 49, 726 N.W.2d 896; In re Disciplinary Proceedings Against Paul, 2007 WI 11, ¶22, 298 Wis. 2d 629, 726 N.W.2d 253; In re Disciplinary Proceedings Against Morrissey, 2005 WI 169, ¶27, 286 Wis. 2d 579, 707 N.W.2d 142; In re Disciplinary Proceedings Against Malloy, 2002 WI 52, ¶13, 252 Wis. 2d 597, 644 N.W.2d 663.

¶43 I concur rather than dissent because it is too cumbersome for the court to reject a stipulation.

1

¶44 I advocated for the creation of a committee to review the procedures of the OLR and recommend changes.[1] A majority of the justices finally created such a committee. I would hope that the Office of Lawyer Regulation Procedure Review Committee studies both plea negotiations and stipulations.

¶45 Unfortunately, the Committee was formed without any input from the bench, bar, or public.

¶46 The members of the Committee are:

- Hon. (ret.) Gerald Ptacek (chair)

- Attorney Michael Apfeld (Godfrey & Kahn)

- Mr. Mark Baker (WS Darley & Co.)

- Attorney Rick Esenberg (Wisconsin Institute for Law & Liberty)

- Attorney Edward Hannan (Hannan Legal LLC)

- Attorney Amy Jahnke (Anderson, O'Brien, Bertz, Skrenes & Golla LLP)

- Attorney Terry Johnson (Peterson, Johnson & Murray SC)

- Attorney Catherine La Fleur (La Fleur Law Office SC)

---

[1] See, e.g., In re Disciplinary Proceedings Against Osicka, 2014 WI 34, ¶38, 353 Wis. 2d 675, 847 N.W.2d 333 (Abrahamson, C.J., concurring); In re Disciplinary Proceedings Against Osicka, 2014 WI 33, ¶37, 353 Wis. 2d 656, 847 N.W.2d 343 (Abrahamson, C.J., concurring); In re Disciplinary Proceedings Against Johns, 2014 WI 32, ¶¶68-76, 353 Wis. 2d 746, 847 N.W.2d 179 (Abrahamson, C.J., dissenting); In re Disciplinary Proceedings Against Kratz, 2014 WI 31, ¶¶73-75, 353 Wis. 2d 696, 851 N.W.2d 219 (Abrahamson, C.J., concurring); Rule Petition 15-01, In the Matter of the Review of the Office of Lawyer Regulation (petition filed Feb. 6, 2015; dismissed by a vote of the majority of the court Dec. 21, 2015).

- Attorney Frank LoCoco (Husch Blackwell LLP)

- Professor Michael McChrystal (Marquette University Law School)

- Attorney David Meany (Wisconsin Department of Justice)

- Attorney Jennifer Nashold (Wisconsin Division of Hearings & Appeals)

- Attorney Joseph Ranney (DeWitt Ross & Stevens SC)

- Attorney Jacquelynn Rothstein (Board of Bar Examiners)

- Attorney Carrie Schneider (Outagamie County District Attorney's Office)

- Attorney Paul Schwarzenbart (Stafford Rosenbaum LLP)

- Attorney Christopher Sobic (State Public Defender's Office)

- Attorney Rod Rogahn (Rogahn Jones LLC)

- Hon. David Wambach (Jefferson County Circuit Court Judge)

¶47 Unfortunately the Committee has only one public member. No charge was provided to the Committee, but it has adopted a mission statement.[2] No time has been proposed within which the committee is to complete its work. Unfortunately, the committee has no web site and does not publicly announce its meetings or distribute its minutes widely. Fortunately, the

---

[2] "It is the mission of the OLR Procedure Review Committee to review OLR procedures/process and structure and to report to the Wisconsin Supreme Court recommendations for changes to the current Supreme Court rules that would increase the efficiency and effectiveness of the OLR procedures/process."

3

committee has an able reporter——Attorney Marsha Mansfield of the University of Wisconsin Law School faculty.

¶48  I hope that the Committee's work will be more public and will benefit from public participation to improve the procedures for disciplining lawyers, for both the public and for lawyers.

¶49  For the reasons set forth, I write separately.

4