# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP520-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Melinda Alfredson, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>          Complainant,<br>     v.<br>Melinda Alfredson,<br>          Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST ALFREDSON

| | |
|---|---|
| OPINION FILED: | February 26, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

| | |
|---|---|
| ATTORNEYS: | |

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2018AP520-D

STATE OF WISCONSIN      :      IN SUPREME COURT

**In the Matter of Disciplinary Proceedings
Against Melinda Alfredson, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant,**

  **v.**

**Melinda Alfredson,**

      **Respondent.**

**FILED**

**FEB 26, 2019**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. We review the report of the referee, Attorney John Nicholas Schweitzer, recommending that the court suspend the Wisconsin law license of Attorney Melinda Alfredson for 90 days and order her to pay the full costs of this disciplinary proceeding. The referee wrote the report after Attorney Alfredson and the Office of Lawyer Regulation (OLR) entered into a stipulation concerning Attorney Alfredson's misconduct in two client matters and her failure to cooperate with the OLR's investigation into her misconduct. Neither party

has appealed from the referee's report and recommendation, and thus our review proceeds under Supreme Court Rule (SCR) 22.17(2).[1]

¶2 We agree that Attorney Alfredson's professional misconduct warrants a 90-day suspension. We further agree that Attorney Alfredson should pay the full costs of this matter, which total $2,649.59 as of November 15, 2018. No restitution was sought and none is ordered.

¶3 Attorney Alfredson obtained her Wisconsin law license in 2009. In 2017, this court suspended her law license for 60 days based on 16 counts of misconduct arising out of her representation of two clients, her various trust account violations, and her failure to cooperate with the OLR's investigation into her misconduct. See In re Disciplinary Proceedings Against Alfredson, 2017 WI 6, 373 Wis. 2d 79, 890 N.W.2d 13 ("Alfredson I").

¶4 In March 2018, the OLR filed the underlying complaint against Attorney Alfredson. The OLR alleged that Attorney Alfredson had engaged in six counts of misconduct based on her work for clients R.R. and M.T., as well as her failure to

_____

[1] SCR 22.17(2) provides:

    If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

2

cooperate with the OLR's investigation into her misconduct. The OLR sought a four-month suspension of Attorney Alfredson's law license.

¶5 In mid-October 2018, following the filing of an answer and the appointment of the referee, the parties executed a stipulation in which Attorney Alfredson withdrew her answer and stipulated to the factual allegations and misconduct charges of the complaint, as amended in the stipulation. Both the OLR and Attorney Alfredson agreed that a 90-day suspension was appropriate. The parties further agreed that the stipulation was not the result of plea bargaining; that Attorney Alfredson's entry into the stipulation was knowing and voluntary; and that she understood the misconduct allegations as amended by the stipulation, her right to contest those allegations, and the ramifications of her entry into the stipulation.

¶6 In late October 2018, the referee filed his report and recommendation. The referee accepted the parties' stipulation and found, based on the stipulation, that the following facts were true.

**Representation of R.R. (Counts 1-4)**

¶7 In February 2015, R.R. and his wife divorced. R.R. was represented by counsel other than Attorney Alfredson at the time.

¶8 In approximately September 2015, R.R. hired Attorney Alfredson to represent him after he had fallen behind on certain post-divorce obligations. R.R. owed his ex-wife past-due maintenance and attorney's fees. In addition, R.R. had not yet

3

attempted to sell a boat that he and his ex-wife had owned during their marriage, even though the divorce judgment required that the boat be placed on the market for sale.

¶9 In mid-October 2015, a family court commissioner found R.R. in contempt and imposed a $2,405.95 purge condition.

¶10 On October 20, 2015, R.R. informed Attorney Alfredson that he had sold the boat for $7,500. Attorney Alfredson and R.R. agreed that the proceeds from the sale would be deposited into Attorney Alfredson's trust account; that the proceeds would be used to pay the $2,405.95 purge amount; and that the remainder of the proceeds ($5,094.05) would be held in trust pending documentation of receipts for storage and the bank payoff for the boat, for which R.R.'s ex-wife was partially responsible.

¶11 Attorney Alfredson never deposited the boat sale proceeds into a trust account. Rather, on October 22, 2015, she deposited the check that R.R. had received for the boat in a non-trust account held by the law firm where she worked at the time. Attorney Alfredson subsequently transferred a portion of the funds to a second non-trust account held by the firm, and transferred another portion of the funds to a third non-trust account held by the firm.

¶12 In November 2015, Attorney Alfredson provided R.R.'s ex-wife's lawyer with a check, drawn from one of these non-trust accounts, for the $2,405.95 purge amount. Attorney Alfredson also used some of R.R.'s funds for her own personal use.

4

¶13 In April 2016, R.R. terminated Attorney Alfredson and retained a new lawyer. In a May 9, 2016 letter to R.R., Attorney Alfredson agreed to forward the remaining proceeds from the boat sale to R.R.'s new lawyer. Later in May 2016, Attorney Alfredson provided the OLR with a carbon copy of a purported check that she allegedly wrote to R.R.'s new lawyer in the amount of the boat sale proceeds left after the $2,405.95 purge payment; i.e., $5,094.05.

¶14 In early June 2016, the circuit court ordered that $5,000 of the proceeds from the boat sale were to be paid to R.R.'s ex-wife's lawyer within ten business days. In mid-June 2016, R.R.'s ex-wife's lawyer wrote R.R.'s new lawyer, inquiring about the status of the $5,000 payment and stating that "Attorney Alfredson advises that she sent the monies from her trust to you." Attorney Alfredson was copied on this letter. In response, R.R.'s new lawyer wrote Attorney Alfredson to say that she had not received any trust funds from Attorney Alfredson. Almost four months after receiving this letter, in October 2016, Attorney Alfredson delivered a $5,094.95 check made payable to R.R.'s ex-wife's lawyer. The check was drawn from a non-trust account.

¶15 In April 2016, R.R. filed a grievance with the OLR against Attorney Alfredson. In mid-July 2016, the OLR notified Attorney Alfredson of the investigation of R.R.'s grievance and requested certain information and records from her. She did not respond.

5

¶16 In August 2016, the OLR sent Attorney Alfredson a second request for information and records via certified mail. Although Attorney Alfredson signed the return receipt for the letter, she did not respond.

¶17 In early September 2016, the OLR personally served Attorney Alfredson with a letter in which it threatened to move for a temporary license suspension for failure to cooperate with its investigation. In late September 2016, the OLR received a letter response from Attorney Alfredson to R.R.'s grievance. Attorney Alfredson failed to disclose in her letter that there was any issue with respect to the delivery of the remaining proceeds from the boat sale.

¶18 In April 2017, Attorney Alfredson wrote a letter to the OLR stating that in May 2016, she had sent a $5,094.05 check to R.R.'s new lawyer, but she stopped payment on the check when that lawyer informed her that she had never received the check.

¶19 In May 2017, the OLR sent a letter to Attorney Alfredson requesting additional information and documents. Attorney Alfredson did not respond.

¶20 In June 2017, the OLR wrote Attorney Alfredson again, reminding her of her duty to cooperate. In a July 2017 telephone conversation with OLR staff, Attorney Alfredson stated that her response was in the mail and that she would fax a copy of the response to the OLR. The OLR received nothing from Attorney Alfredson.

¶21 In August 2017, the OLR personally served Attorney Alfredson with a letter in which it threatened to move for a

temporary license suspension for failure to cooperate with its investigation. In late August 2017, the OLR received Attorney Alfredson's faxed response to the OLR's May 2017 letter.

**Representation of M.T. (Counts 5-6)**

¶22 In October 2015, M.T. hired Attorney Alfredson to represent him in a divorce. In a May 9, 2016 letter to Attorney Alfredson, M.T.'s wife's lawyer identified certain personal property items that her client wanted to retrieve from the marital residence but that M.T. had allegedly prevented her from retrieving. Attorney Alfredson did not directly communicate with M.T. regarding this issue. M.T.'s wife moved for contempt based on M.T.'s failure to return some of the items on the personal property list.

¶23 In June 2016, M.T. retained a new lawyer. That same month, M.T.'s new lawyer asked Attorney Alfredson to provide him with M.T.'s file as soon as possible. His office followed-up that request with numerous written requests and phone calls asking for the file. Attorney Alfredson did not provide M.T.'s file until September 2016, over three months after the new lawyer's initial request for the file.

¶24 The referee reviewed the complaint and stipulation and concluded that, in connection with her work for R.R. and M.T., Attorney Alfredson had committed the following forms of misconduct:

7

- Count One: By failing to hold R.R.'s funds in trust, Attorney Alfredson violated SCR 20:1.15(b)(1).[2]

- Count Two: By failing to promptly deliver funds that she collected in connection with her representation of R.R. to R.R.'s ex-wife's lawyer, Attorney Alfredson violated former SCR 20:1.15(d)(1), and SCR 20:1.15(e)(1).[3]

- Count Three: By converting R.R.'s funds that she received in connection with her representation of R.R.

---

[2] SCR 20:1.15(b)(1) provides:

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

[3] By S. Ct. Order 14-07, 2016 WI 21 (issued Apr. 4, 2016, eff. July 1, 2016) former SCR 20:1.15(d)(1) was renumbered as SCR 20:1.15(e)(1). The text of the rule was not changed. Former SCR 20:1.15(d)(1) and current SCR 20:15(e)(1) provide:

Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

for her own personal use, Attorney Alfredson violated SCR 20:8.4(c).[4]

- Count Four: By failing to timely provide the OLR with a written response to R.R.'s grievance, and by failing to timely provide the OLR with a response to the OLR's additional request for information, Attorney Alfredson violated SCR 22.03(2),[5] enforced via SCR 20:8.4(h).[6]

- Count Five: By failing to address with M.T. the personal property issue set forth in his wife's

---

[4] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[5] SCR 22.03(2) provides:

Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

[6] SCR 20:8.4(h) provides: "It is professional misconduct for a lawyer to fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

9

lawyer's May 9, 2016 letter, Attorney Alfredson violated SCR 20:1.3.[7]

- Count Six: By failing to timely deliver M.T.'s case file to successor counsel, Attorney Alfredson violated SCR 20:1.16(d).[8]

¶25 The referee then considered appropriate discipline. He adopted, without analysis, the OLR's reasoning and recommendation set forth in its sanction memorandum. In that memorandum, the OLR discussed certain cases that, in its view, justified a 90-day suspension period. See In re Disciplinary Proceedings Against Briggs, 2014 WI 119, 358 Wis. 2d 493, 861 N.W.2d 528 (90-day suspension for lawyer with no prior discipline who committed 12 counts of misconduct); see also In re Disciplinary Proceedings Against Woods, 2008 WI 79, 311 Wis. 2d 213, 751 N.W.2d 840 (90-day suspension for lawyer with an extensive disciplinary history who committed four counts of

---

[7] SCR 20:1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

[8] SCR 20:1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

misconduct). The OLR also discussed various aggravating and mitigating factors. On the aggravating side of the scale, the OLR noted that Alfredson has a disciplinary history, converted client funds for personal use, and engaged in misconduct with a pattern of neglect, dishonesty, and failure to cooperate. On the mitigating side of the scale, the OLR noted Attorney Alfredson's "lack of substantial legal experience," her acknowledgement of her misconduct, and her provision of "confidential information to OLR regarding family and medical issues which affected her ability to practice law during the time period in question."

¶26 Ultimately, the referee accepted the parties' stipulated discipline and recommended a 90-day suspension. He also recommended that Attorney Alfredson be held responsible for all the costs of this disciplinary proceeding, which total $2,649.59 as of November 15, 2018.

¶27 No appeal was filed, so we review this matter pursuant to SCR 22.17(2). We will affirm the referee's findings of fact unless they are clearly erroneous. We review conclusions of law de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. We may impose whatever sanction we see fit, regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶28 There is no showing that any of the referee's findings of fact, based on the parties' stipulation, are clearly erroneous. Accordingly, we adopt them. We also agree with the

11

referee's legal conclusions that Attorney Alfredson violated the supreme court rules noted above.

¶29 The central issue for this court is whether a suspension greater than the 90-day recommended suspension is in order. Our concern over the length of suspension is prompted by our February 2017 decision in Alfredson I, in which we noted that the 60-day suspension we imposed was "modest" given the facts at hand, and cautioned that a longer suspension would have been in order had Attorney Alfredson been previously disciplined. Alfredson I, 373 Wis. 2d 79, ¶35. We warned Attorney Alfredson "that the court may impose progressively severe sanctions when an attorney engages in repeated misconduct," and we imposed the stipulated 60-day suspension "with the expectation that Attorney Alfredson will not commit future misconduct subjecting her to additional discipline." Id. Attorney Alfredson is now back before us——and, troublingly, the facts show that she failed to cooperate with the OLR's investigation regarding her representation of R.R. even after the February 2017 issuance of Alfredson I.

¶30 "This court has long adhered to the concept of progressive discipline in attorney regulatory cases." In re Disciplinary Proceedings Against Netzer, 2014 WI 7, ¶49, 352 Wis. 2d 310, 841 N.W.2d 820. The question for us here is whether moving from a 60-day suspension to the recommended 90-day suspension constitutes a sufficiently serious step in the progressive discipline process.

12

¶31 On these facts, we conclude the answer is yes——though it is a close call. The closeness of the call stems from the weakness of certain mitigating circumstances identified by the OLR in its sanction memorandum——which, again, the referee endorsed in its entirety without analysis. The OLR stated that Attorney Alfredson's "lack of substantial legal experience" should count as a mitigating factor. But Attorney Alfredson was admitted to the bar in 2009, and the misconduct in this case occurred years later, in 2015 through much of 2017. By this time, Attorney Alfredson was not a brand-new lawyer. Moreover, the ethical principles she violated are not elusive: hold client funds in trust; do not spend them on personal matters; pay client funds owed to third parties promptly; communicate with clients diligently; cooperate with the OLR, etc. Even the greenest lawyer is charged with knowledge of these basic rules. Surely Attorney Alfredson, with multiple years of experience under her belt, should have known better.

¶32 We also cannot assign any weight to the OLR's statement in its sanction memorandum that Attorney Alfredson provided "confidential information" to the OLR regarding "family and medical issues which affected her ability to practice law during the time period in question." Problematically, there is no evidence in the record regarding the nature of Attorney Alfredson's alleged family and medical issues, or their possible nexus to her misconduct. The parties' stipulation provides no details, and the issues went unaddressed by the referee. Thus, nothing stands behind the assertion that Attorney Alfredson's

13

family and medical issues should partially excuse her misconduct except the parties' own say-so. That is not enough. See In re Disciplinary Proceedings Against Davig Huesmann, 2018 WI 114, ¶40, 385 Wis. 2d 49, ___ N.W.2d ___ (declining to consider lawyer's personal and substance abuse problems as mitigating factors absent a "showing in [the] record that those problems were the cause of her professional misconduct"); In re Disciplinary Proceedings Against Sosnay, 209 Wis. 2d 241, 243, 562 N.W.2d 137, (1997) ("Absent a causal connection between an attorney's medical condition and that attorney's professional misconduct, the medical condition may not be considered a factor mitigating either the seriousness of the misconduct or the severity of discipline to be imposed for it.")

¶33 Nevertheless, we conclude that a 90-day suspension of Attorney Alfredson's law license is sufficient to impress upon her the seriousness of her professional duties and to deter her and others from engaging in similar misconduct. We note the presence of certain mitigating factors. Attorney Alfredson did, ultimately, endeavor to rectify the consequences of her misconduct. She also entered into a stipulation that resolves this disciplinary proceeding, wherein she explicitly acknowledged that her misconduct caused harm and that she was wrong for failing to cooperate with the OLR's investigation. In addition to these mitigating factors, we note that a roughly analogous case, In re Disciplinary Proceedings Against Wood, 2014 WI 116, 358 Wis. 2d 472, 854 N.W.2d 844, provides support for a 90-day suspension. See id. (imposing a 90-day suspension

14

on a respondent-lawyer who had been suspended the previous year in his first disciplinary matter, and who stipulated to seven misconduct counts, including failing to keep a client informed of the case status, failing to cooperate with the OLR, and various trust account violations). We impose this 90-day suspension with the same caveat that we gave in Alfredson I: we expect that Attorney Alfredson will not commit future misconduct, and should this expectation be disappointed, our progressive discipline system will await.

¶34 As is our normal practice, we find it appropriate to impose the full costs of this disciplinary proceeding on Attorney Alfredson. See SCR 22.24(1m).

¶35 Finally, as to restitution, none was sought and none is ordered.

¶36 IT IS ORDERED that the license of Melinda Alfredson is suspended for a period of 90 days, effective April 9, 2019.

¶37 IT IS FURTHER ORDERED that within 60 days of the date of this order, Melinda Alfredson shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $2,649.59 as of November 15, 2018.

¶38 IT IS FURTHER ORDERED that Melinda Alfredson shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶39 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(2).

15