**2025 WI 41**

# Supreme Court of Wisconsin



IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
PETER J. KOVAC, ATTORNEY AT LAW

OFFICE OF LAWYER REGULATION,
*Complainant,*

*v.*

PETER J. KOVAC,
*Respondent.*

No. 2024AP1511-D

Decided August 15, 2025

ATTORNEY DISCIPLINARY PROCEEDING

¶1 PER CURIAM. This case is before the court following the report of referee L. Michael Tobin, declaring Attorney Peter J. Kovac to be in default and recommending that the court revoke his license to practice law in Wisconsin. Attorney Kovac attempted to file a late appeal of the referee's report, which the OLR moved to dismiss. By order dated April 10, 2025, this court dismissed the untimely appeal and ordered that this matter would proceed for review under SCR 22.17(2).[1]

---

[1] SCR 22.17(2) provides, in pertinent part: "If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline."

IN THE MATTER OF DISCIPLINARY PROCEEDING AGAINST
ATTORNEY PETER J. KOVAC
Per Curiam

¶2      The Office of Lawyer Regulation (OLR) filed a 70-page complaint against Attorney Kovac, alleging he committed 11 counts of professional misconduct in relation to two clients in three separate matters, including two serious criminal matters in which his clients' convictions were ultimately overturned on appeal, due to Attorney Kovac's misconduct. The allegations include failure to communicate in writing the scope of his representation and fees, lack of diligence, failure to keep a client reasonably informed about the status of a matter, failure to protect a client's interests upon termination of representation, failure to provide competent representation, failure to consult with a client concerning the objectives of representation, and failure to cooperate with the OLRs investigation. The OLR sought revocation of Attorney Kovac's license to practice law as a sanction for the alleged violations. Following Attorney Kovac's failure to answer and abide by scheduling order deadlines, the OLR moved for default judgment, and the referee declared Attorney Kovac to be in default. The referee further concluded that the allegations in the complaint supported the counts of misconduct alleged therein. Finally, the referee recommended revocation of Attorney Kovac's license as the appropriate sanction for his misconduct.

¶3      We conclude that Attorney Kovac was in default for failing to timely answer or otherwise join issue and failure to comply with the referee's scheduling order deadlines for doing so. We further conclude that the allegations in the complaint provide clear, satisfactory, and convincing evidence that Attorney Kovac committed all counts of misconduct alleged in complaint. We agree with the referee that Attorney Kovac's misconduct warrants revocation of his license to practice law. Consistent with the court's standard practice, we impose the full costs of this proceeding on Attorney Kovac, which total $6,816.88 as of March 11, 2025.

**Procedural History**

¶4      Attorney Kovac was admitted to the practice of law in Wisconsin on August 28, 1973. He last practiced in the Milwaukee area.

¶5      Attorney Kovac has an extensive disciplinary history. In 2008, Attorney Kovac received a public reprimand for violations of multiple SCRs involving four separate clients, including lack of diligence, failure to provide competent representation, failure to communicate,

conflict-of-interest, and noncooperation with the OLR.[2] Attorney Kovac was again publicly reprimanded for failing to respond to an OLR investigation in 2012.[3] In 2016, Attorney Kovac received a 90-day suspension following a default finding for violations of multiple SCRs, including rules relating to fee agreements, delivery of client files to successor counsel, failure to comply with court deadlines and orders, and noncooperation with the OLR.[4] In 2020, he received a five-month suspension for failure to deliver records after termination of representation, failure to provide diligent representation, and failure to cooperate with an OLR investigation.[5] He received another concurrent, five-month suspension that same year for similar misconduct.[6] Finally, on July 17, 2021, Attorney Kovac's license to practice law was automatically suspended for failure to cooperate with the OLR's investigation into this matter, which suspension was lifted in October 2021. Attorney Kovac's license to practice law currently remains in good standing.

¶6    The OLR filed its complaint in this matter on July 29, 2024, alleging that Attorney Kovac committed 11 counts of professional misconduct and seeking revocation of his license to practice law. Attorney Kovac signed an admission of service on August 19, 2024. Attorney Kovac failed to answer the complaint within 20 days, pursuant to SCR 22.14(1),[7]

---

[2] Public Reprimand of Peter J. Kovac, No. 2008-05.

[3] *In re Disciplinary Proceedings Against Kovac*, 2012 WI 117, 344 Wis. 2d 522, 823 N.W.2d 371.

[4] *In re Disciplinary Proceedings Against Kovac*, 2016 WI 62, 370 Wis. 2d 388, 881 N.W.2d 44.

[5] *In re Disciplinary Proceedings Against Kovac*, 2020 WI 47, 391 Wis. 2d 719, 943 N.W.2d 504.

[6] *In re Disciplinary Proceedings Against Kovac*, 2020 WI 58, 392 Wis. 2d 144, 944 N.W.2d 605.

[7] SCR 22.14(1) provides: "The respondent shall file an answer with the supreme court and serve a copy on the office of lawyer regulation within 20 days after service of the complaint. The referee may, for cause, set a different time for the filing of the answer."

and the OLR filed a motion for default judgment on October 29, 2024.[8] The referee held a scheduling hearing on November 6, 2024, at which time Attorney Kovac indicated his intent to contest the complaint.

¶7 The referee adjourned the hearing via written order on November 15, 2024, until December 11, 2024, to allow Attorney Kovac to respond to the complaint and motion for default judgment. The order reminded the parties of the requirement that original copies of all documents in the proceeding needed to be filed with the clerk of the supreme court. Attorney Kovac did not answer the complaint or respond to the default judgment motion by the deadline and instead sent an e-mail to the referee, titled "Kovac Initial Response" that "did not directly or systematically address the factual allegations in the Complaint" and was not filed with this court. The referee entered another scheduling order on December 16, 2024, giving the parties until January 3, 2025, to submit written arguments regarding the OLR's motion for default judgment. Attorney Kovac did not file a response by the ordered deadline and instead, on January 6, 2025, sent another e-mail to the referee (again not initially copied to this court)[9] in which he reported that he was taking pain medication due to an injury that prevented him from concentrating on legal work. Attorney Kovac's January 6, 2025 e-mail recited various medical conditions from which he allegedly was suffering, but stated "[n]one of these maladies impair my ability to respond to the current OLR complaint."

¶8 On January 14, 2025, the referee filed his report and recommendation, declaring Attorney Kovac in default pursuant to SCR

---

[8] Prior to filing the motion for default judgment, the OLR agreed to extend Attorney Kovac's September 9, 2024 deadline to file an answer until October 11, 2024. Attorney Kovac did not file an answer by the extended deadline and did not request any additional extensions from the OLR.

[9] Attorney Kovac's January 6, 2025 e-mail to the referee was subsequently provided to this court by way of an exhibit to an affidavit filed by the OLR in response to Attorney Kovac's motions to reinstate his appellate rights or remand the matter to the referee.

22.16(1).[10] The referee deemed all factual allegations in the complaint to be admitted. The referee further concluded that the factual allegations in the complaint established all of the alleged misconduct violations. The referee recommended that Attorney Kovac's license to practice law be revoked as the appropriate sanction for his misconduct. The referee subsequently recommended that full costs of this proceeding be imposed against Attorney Kovac.

¶9     Attorney Kovac filed an untimely notice of appeal on February 14, 2025, and the OLR moved to dismiss the appeal.[11] By order dated April 10, 2025, this court dismissed the untimely appeal and ordered that this matter would proceed for review under SCR 22.17(2). On April 30, 2025 and May 6, 2025, Attorney Kovac filed motions to reinstate his appeal rights and to remand the matter to the referee "on account of medical disability." The OLR filed a response opposing those motions and submitted an affidavit with exhibits disputing the assertions contained in Attorney Kovac's motions. By order dated June 25, 2025, this court denied Attorney Kovac's motions and reaffirmed that this matter would proceed pursuant to SCR 22.17(2).[12]

### Factual Background and Misconduct Allegations

¶10     The following discussion of the pertinent facts is based on the allegations in the OLR's complaint in this matter, which the referee determined were admitted due to Attorney Kovac's failure to answer, and which the referee summarized in his report. Counts 1-5 relate to Attorney Kovac's representation of M.M. in a criminal matter and civil case. Counts

---

[10] SCR 22.16(1) provides: "The referee has the powers of a judge trying a civil action and shall conduct the hearing as the trial of a civil action to the court. The rules of civil procedure and evidence shall be followed."

[11] Pursuant to SCR 22.17(1), an appeal must be filed within 20 days of the filing of the report. Attorney Kovac filed his notice of appeal 30 days after the referee's report was filed.

[12] The court's rationale for denying those motions is set forth in its June 25, 2025 order.

6-11 relate to Attorney Kovac's representation of R.G. in a criminal matter. The specific counts of misconduct alleged are as follows:[13]

**Representation of M.M.**

¶11 Attorney Kovac represented M.M. in a Milwaukee County criminal case in which M.M. was charged with one count of kidnapping and four counts of second-degree sexual assault of a female acquaintance who was married. M.M. claimed the two were involved in a consensual romantic relationship and frequently spent time together when her husband was away. The victim in that case alleged that she was not romantically involved with M.M., that M.M. assaulted her in his apartment, and that she went to police after M.M. fell asleep. M.M. told Attorney Kovac that certain witnesses, the victim's cellphone records, GPS location data, and surveillance footage would contradict the victim's allegations and support his version of events.

¶12 Following a jury trial, M.M. was convicted of kidnapping and one count of second-degree sexual assault. The jury acquitted M.M. of the remaining charges. Following the conviction, a juror told Attorney Kovac that the bailiff had provided extraneous information to the jury before deliberations and stated "that she would not have voted to convict [M.M.] on any of the counts if she had known that it was possible for the jury not to reach a unanimous verdict on those counts."

¶13 Attorney Kovac represented M.M. in postconviction proceedings and hired an investigator, but refused to meet with the investigator, communicate with her, and did not provide necessary letters to allow her to speak to M.M. while he was incarcerated. Attorney Kovac missed deadlines for requesting transcripts and filing motions for

---

[13] As the referee indicated in his report, the specific factual allegations in the OLR's disciplinary complaint are much more extensive and detailed than the summary provided herein. The court notes that the OLR's complaint is structured in such a way that it contains a recitation of all the factual allegations relating to the two clients and then lists the counts of various alleged SCR violations without identifying which specific paragraphs relate to each count. The referee's report, however, identifies the specific paragraphs in the complaint that support each alleged violation.

postconviction relief.[14] During a lengthy postconviction process, M.M. changed counsel several times, filed certain documents pro se, and contacted both the State Public Defender's Office and circuit court for assistance. The end result of this process was that M.M.'s convictions were overturned and he was granted a new trial. The State ultimately dismissed the remaining charges after losing a motion to introduce other-acts evidence.

¶14 Separately, Attorney Kovac represented M.M. in a civil lawsuit against a car dealership and its general manager for defamation and false imprisonment following M.M.'s arrest for allegedly stealing a vehicle that M.M. claimed the dealership manager had allowed him to use. Attorney Kovac named the wrong corporate defendant (and noted the possibility of such in the complaint), failed to conduct any discovery to ascertain the identity of the correct corporate defendant, failed to respond to discovery requests or seek an extension of time to do so, and failed to respond to a motion for summary judgment by the misnamed corporate defendant. He also failed to communicate with M.M. about any of the above. As a result, the circuit court deemed the corporate defendant's requests for admissions to be admitted, entered summary judgment in favor of the corporate defendant, and barred M.M. from calling any witnesses as a sanction for Attorney Kovac's dilatory practices. M.M. eventually settled the case against the remaining defendant for an insubstantial amount.

Count 1

¶15 The OLR alleged that Kovac violated SCR 20:1.5(b)(l) and (2)[15] by failing to timely communicate to M.M. in writing as to the scope of his

---

[14] According to the OLR's complaint, Attorney Kovac erroneously filed a motion for a new trial based on newly discovered evidence and in the interests of justice and a motion for a new trial based on jury interference before the court entered the judgment of conviction. The court returned these motions to Attorney Kovac, but he did not timely refile them as part of the postconviction process.

[15] SCR 20:1.5(b)(l) requires that "[t]he scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing, before or within a reasonable time after commencing the representation" except that the communication may be made

representation, the rate or basis of fees, and expenses that might be incurred in either the civil or criminal case in which he represented M.M. Specifically, Attorney Kovac did not provide a written explanation of his fees until five years after both the criminal and civil representations began.

Count 2

¶16 The OLR alleged that Kovac failed to diligently pursue M.M.'s interests in both the criminal and civil matters, contrary to SCR 20:1.3,[16] by repeatedly missing deadlines, failing to investigate, failing to secure evidence, failing to file motions, and other failures. In the criminal matter, Kovac failed to interview witnesses identified by M.M. to corroborate M.M.'s version of events, did not make any attempts to secure certain surveillance footage[17] until it had long been deleted, failed to timely obtain the victim's cell phone records and GPS location data, and failed to consult with a DNA expert. After M.M. was found guilty, Attorney Kovac missed multiple deadlines for filing postconviction motions and ordering transcripts. He failed to cooperate with his own investigator, leading to her being unable to perform any work on the file to investigate grounds for postconviction relief.

¶17 In the civil case, Kovac named the wrong corporate defendant, failed to conduct discovery to ascertain the identity of the correct defendant, failed to respond to discovery requests, failed to respond to a motion for summary judgment, and missed other deadlines. The

orally "[i]f it is reasonably foreseeable that the total cost of representation to the client, including attorney's fees, will be $1000 or less[.]" Similarly, SCR 20:1.5(b)(2) provides: "If the total cost of representation to the client, including attorney's fees, is more than $1000, the purpose and effect of any retainer or advance fee that is paid to the lawyer shall be communicated in writing."

[16] SCR 20:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[17] M.M. alleged that he and the victim were captured on surveillance footage outside various establishments the night of the alleged assault and that the videos would contradict the victim's statements to police concerning the nature of their relationship and activities on the night in question.

presiding judge in the case remarked "Mr. Kovac has done nothing on this case."

Count 3

¶18     The OLR alleged that between July 3, 2014 and January 26, 2015, Attorney Kovac failed to keep M.M. informed about the status of his postconviction proceedings in the criminal case and failed to keep him informed as to the status of his civil case and related deadlines, thus violating SCR 20:1.4(a)(3).[18] As a result of Attorney Kovac's lack of communication in the criminal case, M.M. contacted both the circuit court and State Public Defender to request assistance. In the civil case, Attorney Kovac failed to inform M.M. about the status of discovery requests, scheduling deadlines, a pending motion for summary judgment, and the consequences of Attorney Kovac's failure to act.

Count 4

¶19     The OLR alleged that between August 11, 2020 and February 22, 2021, Attorney Kovac violated SCR 20:1.16(d)[19] by failing to review all of M.M.'s file materials in his possession and failing to determine whether he had delivered all such materials to successor postconviction counsel in the criminal case. After successor counsel repeatedly requested M.M.'s file, Attorney Kovac provided only some documents and failed to provide many of the pertinent materials. "Over eight months later, after extensive communication with OLR regarding the remaining materials, Kovac finally provided [M.M.] with photographs, phone records, and other file materials not originally given to successor counsel."

---

[18] SCR 20:1.4(a)(3) states that "lawyer shall . . . keep the client reasonably informed about the status of the matter[.]"

[19] SCR 20:1.16(d) provides, in pertinent part that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled . . . ."

Count 5

¶20     The OLR alleged that Attorney Kovac violated SCR 22.03(2) and (6),[20] enforceable via SCR 20:8.4(h),[21] by failing to cooperate with its investigation into M.M.'s grievance. On February 27, 2019, this court issued a show-cause order due to Attorney Kovac's noncompliance. Specifically, Attorney Kovac failed to respond to four investigative letters sent by the OLR from August 29, 2018 to December 20, 2018. Additionally, Attorney Kovac failed to respond to subsequent letters from the OLR in April and June 2021, when it had reopened the investigation.[22] Attorney Kovac again failed to respond. As a result, on July 17, 2021, the OLR automatically

---

[20] SCR 22.03(2) and (6) provide:

(2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

 . . .

(6) In the course of the investigation, the respondent's willful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

[21] SCR 20:8.4(h) provides that "[i]t is professional misconduct for a lawyer to . . . fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)[.]"

[22] The OLR placed its investigation of M.M.'s grievance on hold in light of Attorney Kovac's suspension status for other proceedings.

suspended Attorney Kovac's license to practice law for noncompliance with the investigation. After Attorney Kovac eventually provided responses to the OLR several months later, Attorney Kovac's license was reinstated in October 2021.

**Representation of R.G.**

¶21    Counts 6-11 involve Attorney Kovac's representation of R.G. in a prosecution for first-degree intentional homicide. R.D. was murdered in Milwaukee in 2013, and the case remained unsolved for several years. In 2016, an inmate, P.B., was serving a 34-year prison sentence and "told law enforcement that in exchange for a sentence modification he would provide information regarding three murders," including the murder of R.D. P.B. alleged that R.G. had murdered R.D. R.G. was charged with first-degree intentional homicide with use of a dangerous weapon and possession of a firearm by a felon.

¶22    Attorney Kovac represented R.G., despite the fact that Attorney Kovac had represented P.B. in the case for which he was serving time and sought sentence modification. Attorney Kovac did not maintain a conflict check system and failed to take any steps to identify P.B. as a past client. [23]

¶23    R.G. told Attorney Kovac that at the time of the murder he was in Beaver Dam living with an individual who was pregnant with his child. R.G. provided Attorney Kovac with the names of witnesses to corroborate his alibi. Attorney Kovac, however, failed to file a notice of alibi defense and did not prepare any of these witnesses to testify at trial. During

---

[23] The OLR further alleged that when this matter came up at trial, Attorney Kovac had no recollection of representing P.B. Also, P.B. refused to provide a conflict waiver to allow Attorney Kovac to cross-examine him, and P.B.'s counsel asserted that P.B. had provided information to Attorney Kovac about R.D.'s murder that he wished to exchange for a lesser sentence. Despite multiple paragraphs in the complaint relating to this conflict, the OLR did not allege that Attorney Kovac violated any SCRs related to conflict of interest. Instead, these allegations appear to relate to Count 8 in the Complaint, which alleges that Attorney Kovac violated SCR 20:1.3 by generally "failing to diligently pursue [R.G.'s] interests" in the criminal case.

trial, Attorney Kovac told R.G. that he had an investigator who spoke to the witnesses R.G. identified. When R.G. expressed discontent with the state of affairs during trial, "Kovac told [R.G.] not to worry, that [R.G.] needed to trust Kovac, and that Kovac was defending [R.G.] as best he could."

¶24    At trial (and after the State refused to offer P.B. sentence modification), P.B. stated that he "did not recall" implicating R.G. in R.C.'s homicide. However, the State called a law enforcement officer to testify as to P.B.'s prior statements implicating R.G. The State also called another witness who identified R.G. as being near the scene of the crime from a photo array.

¶25    Attorney Kovac did not tell R.G. that he failed to file a notice of alibi and that, as a result, the State would likely object if he attempted to call the defense witnesses that R.G. had identified. During a brief recess, Attorney Kovac informed R.G. that he intended to call only a police record custodian to testify that R.G.'s height and weight did not match the description provided by one of the witnesses to the murder. Attorney Kovac informed R.G. that "they did not need to call any other witnesses because the State had not proven the State's case."

¶26    Also, R.G. indicated that he wanted to testify in his defense, but "Kovac told him that he had not prepared for [R.G.] to testify and the State had not proven its case, so [R.G.] did not need to testify" and that R.G. "needed to trust him." Attorney Kovac did not call R.G. to testify; nor did he call any of the defense witnesses R.G. had identified. The jury convicted R.G. of both counts, and R.G. was sentenced to life in prison for the homicide charge and 10 years in prison for the felon-in-possession of a firearm charge. R.G. "learned after the trial that Kovac had never had an investigator working on his case and that Kovac had never interviewed some of his witnesses."

¶27    Following trial, Attorney Kovac told R.G. that he would be filing a motion for a new trial based on a miscarriage of justice. Attorney Kovac did not timely do so, nor did he explain that he would not be filing such a motion. Attorney Kovac also failed to adequately meet with R.G. to prepare for the sentencing hearing and discuss the presentence report. During a brief meeting before the sentencing hearing, Attorney Kovac apologized to R.G. for being overconfident and unprepared at trial, and indicated that he "should have investigated more and taken other actions to better prepare for [R.G.'s] defense." Attorney Kovac promised to file a motion for a new trial before the sentencing hearing and work to with

successor counsel to prepare a motion for a new trial based on ineffective assistance of counsel.

¶28 Attorney Kovac did not do so, but did attempt to delay the sentencing hearing. The court initially denied the motion and "expressed frustration with Kovac, including that the court believed Kovac was attempting to delay the sentencing for reasons that had no legal basis for delay." However, the court "adjourned the scheduling hearing because the court was not confident that Kovac had sufficiently prepared or that Kovac had sufficiently prepared [R.G.] for the sentencing hearing."

¶29 Attorney Kovac also failed to inform R.G. about a restitution hearing scheduled for March 1, 2018, or prepare him for the hearing. Attorney Kovac had no communications with R.G. the entire month before the hearing, and did not file a motion for a new trial. Additionally, Attorney Kovac failed to appear at the restitution hearing. Following a colloquy with R.G., the court rescheduled the restitution hearing, removed Attorney Kovac as counsel, and appointed successor counsel.

¶30 Successor counsel filed a motion for a new trial based on ineffective assistance of counsel and requested a *Machner*[24] hearing. Successor counsel provided affidavits from defense witnesses who testified as to R.G.'s alibi defense, provided a motive for P.B. to falsely inculpate R.G., and indicated that they provided this information to Attorney Kovac before trial.

¶31 At the *Machner* hearing, Attorney Kovac did not recall speaking with some of the defense witnesses, did not have any reports from his investigator about speaking with the defense witnesses, did not recall discussing any witnesses' interviews with the investigator, and said that R.G. "never told him that Defense Witnesses could testify as to [R.G.]'s alibi or that [R.G.] was in Beaver Dam at the time of the murder." Instead, Attorney Kovac believed that R.G.'s alibi was that he was in Lacrosse at the time of the murder and could not produce witnesses to verify this. The defense witnesses testified that they had spoken with Attorney Kovac and told him they would testify that R.G. was in Beaver Dam at the time of the murder.

---

[24] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶32    The postconviction court granted R.G.'s motion for a new trial, concluding that Attorney Kovac provided ineffective assistance of counsel by failing to pursue an alibi defense and that R.G. was prejudiced as a result.[25]

### Count 6

¶33    The OLR alleged that Attorney Kovac violated SCR 20:1.5(b)(1) and (2) by failing to communicate with R.G. as to the rate and basis for his fees until after R.G.'s conviction. Specifically, Attorney Kovac did not present R.G. with a fee agreement until after trial, but the agreement was drafted as if Attorney Kovac provided it before trial, as it included a contingency for pretrial resolution.

### Count 7

¶34    The OLR alleged that Attorney Kovac violated SCR 20:1.1[26] in failing to provide competent representation to R.G. by failing to present alibi witnesses at trial and take the necessary steps to do so, including filing a notice of alibi and preparing defense witnesses to testify. The postconviction court concluded that there was "a significant likelihood" that the alibi defense "could have made a difference with the jury."

### Count 8

¶35    The OLR alleged that Attorney Kovac violated SCR 20:1.3 by failing to diligently pursue R.G.'s interests in the criminal case. This included failure to investigate, prepare, and present the alibi defense,

---

[25] Although not contained in the disciplinary record, the court notes that docket entries from the criminal court proceeding indicate that on March 3, 2025, R.G. pleaded guilty to second-degree reckless homicide and was sentenced to 6.5 years' initial confinement and 3 years' extended supervision, which was essentially a "time served disposition in terms of initial confinement.".

[26] SCR 20:1.1 states: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

failure to identify and prepare for testimony of a critical prosecution witness, failure to communicate with R.G. to prepare him for the sentencing hearing, and failing to prepare R.G. before trial for the potential prejudice of his prior felony record being disclosed to the jury. Additionally, Attorney Kovac failed to ascertain the identity of the witness who identified R.G. from a photo array and thus was unable to present a learned treatise concerning why photographic identifications could be mistaken. Attorney Kovac also had not attempted to interview the witness before trial and was not prepared for cross-examination of key witnesses.

Count 9

¶36 The OLR alleged that Attorney Kovac violated SCR 20:1.4(a)(2)[27] by failing to reasonably consult with R.G. about his defense prior to trial and failure to communicate with him about the restitution hearing. Specifically, "Kovac misled his client to believe, on the day that his trial started, that Kovac had arranged interviews of potential defense witnesses." And "[e]ven after the prosecution had rested its case, [R.G.] still reasonably believed that Kovac was prepared to call the potential defense witnesses whom [R.G.] had identified." Additionally, even though R.G. wanted to testify, Attorney Kovac had told him during the middle of trial that Attorney Kovac was not prepared for him to do so. Further, Attorney Kovac's failure to prepare R.G. for the restitution hearing or explain its nature led to Attorney Kovac being removed as R.G.'s counsel.

Count 10

¶37 The OLR alleged that Attorney Kovac violated SCR 20:1.4(a)(3) by failing to keep R.G. reasonably informed about the status of his criminal case as a result of Kovac's failure to explain to R.G. that he had reconsidered or decided not to file any postconviction motions. Specifically, Attorney Kovac "did not tell [R.G.] that Kovac was having difficulty constructing an argument for postconviction relief that had any chance of being successful . . . ." But based on Attorney Kovac's prior representations to R.G., R.G. believed that Attorney Kovac "would prepare a post-

---

[27] SCR 20:1.4(a)(2) states that "[a] lawyer shall . . . reasonably consult with the client about the means by which the client's objectives are to be accomplished[.]"

conviction motion." However, Attorney Kovac failed to do so and did not timely communicate his decision to R.G. before being removed as counsel of record. In fact, Attorney Kovac failed to meet with R.G. for nearly three months after his conviction.

Count 11

¶38 The OLR alleged that Attorney Kovac violated SCR 22.03(2) and (6), enforceable via SCR 20:8.4(h), by failing to provide requested information and documents to the OLR during its investigation of R.G.'s grievance. This led to the issuance of show-cause orders on April 20, 2018 and February 27, 2019, and to the OLR automatically suspending Attorney Kovac's license to practice law on July 17, 2021. Specifically, Attorney Kovac "did not meet the deadline to respond to OLR's original request for information regarding [R.G.'s] grievance; he did not respond until the Supreme Court had issued an order to show cause." And "when OLR requested additional information, Kovac again missed the deadline to respond and OLR again obtained an order to show cause." "After a pause in OLR's investigation while Kovac was suspended in separate proceedings, OLR made two more requests for information in April and June 2021, to which Kovac again failed to respond."

**Report and Recommendation**

¶39 On January 14, 2025, referee L. Michael Tobin issued a 17-page report, finding Attorney Kovac in default, concluding that he committed the misconduct alleged in the complaint, and recommending that Attorney Kovac's license to practice law in Wisconsin be revoked.

¶40 As to the motion for default judgment, the referee explained that Attorney Kovac did not file an answer to the OLR's complaint, nor did he file a response to the OLR's motion for default judgment, despite two scheduling order deadlines to do so after the motion was filed. While Attorney Kovac sent two emails to the referee objecting to the complaint and motion, he never joined issue or filed a formal pleading or response to the motion for default judgment. The referee concluded that default was proper based on "[t]he number and severity of Kovac's alleged violations of the SCR[s]," and because "[u]nnecessary delay in resolving these allegations not only is contrary to the SCR[s], but also potentially places clients at risk." Further, the referee concluded that Attorney Kovac's alleged medical issues, referenced in an email, "are not a sufficient reason either to

deny the Motion for Default Judgment or to defer a ruling[,]" noting that "Kovac has had over four months to file an answer to the Complaint and over two months to respond to the Motion for Default Judgment" and failed to do so. The referee further noted that Attorney Kovac's suspension in 2016 "resulted from a default finding. Therefore, Kovac should certainly have been aware of this consequence for failing to answer an OLR complaint."

¶41 Accordingly, the referee concluded that Attorney Kovac was "in default, and all of the factual allegations in the Complaint are established." The referee thus accepted the factual allegations in the complaint as true and concluded that the allegations were sufficient to establish each alleged violation of the SCRs, listed above.

¶42 As to the appropriate sanction, the referee recommended that "[t]o protect potential clients and the court system from future misconduct, to deter similar conduct by other attorneys, and to avoid depreciating the serious nature of the pervasive and repetitive misconduct in this case, revocation is the appropriate sanction."

¶43 The referee emphasized the serious nature of the misconduct at issue, noting that this case involved 11 counts of misconduct and that as a result of Attorney Kovac's actions and omissions, two clients in very serious criminal matters were convicted and subject to substantial penalties, but later had their convictions vacated.

¶44 The referee also noted that Attorney Kovac "has a long disciplinary history dating back to 2008: two public reprimands, a 90-day suspension, two concurrent five-month suspensions, and a suspension for failure to provide information requested by OLR in this proceeding." Further, quoting one of Attorney Kovac's prior disciplinary cases,[28] the referee remarked that the charged counts of misconduct in this case "continue a pattern which this Court identified in 2016: serious misconduct that included neglect of clients; lack of cooperation with successor counsel and with OLR investigations; and 'a course of delay, excuses, and misrepresentations.'"

---

[28] *In re Disciplinary Proceedings Against Kovac*, 2016 WI 62, ¶17, 370 Wis. 2d 388, 881 N.W.2d 44

¶45  The referee acknowledged that revocation is "the ultimate consequence for professional misconduct" and "is appropriate only when other forms of discipline are inadequate." However, here, "the nature of the violations, the number of violations, the prior disciplinary history, and the similarity of the present misconduct to earlier misconduct all support the most-severe form of discipline." The referee noted that this court has ordered revocation as a sanction for similar misconduct, including in *In re Disciplinary Proceedings Against Gegner*, 2017 WI 11, ¶¶11, 13, 15, 373 Wis. 2d 192, 890 N.W.581, for "failure to provide diligent representation, failure to communicate with clients, and failure to cooperate with OLR investigations."

¶46  On March 6, 2025, the referee filed a supplemental report on costs, recommending imposition of the full costs of the proceeding on Attorney Kovac. As of February 13, 2025, the OLR's reported costs were $5,285.50. The referee reported additional costs of $1,531.38 as of March 11, 2025.

## Analysis

¶47  The court reviews this matter pursuant to SCR 22.17(2). We will affirm the referee's findings of fact unless they are clearly erroneous. *In re Disciplinary Proceedings Against Alfredson*, 2019 WI 17, ¶27, 385 Wis. 2d 565, 923 N.W.2d 869. We review conclusions of law de novo. *Id.* The court may impose whatever sanction it deems appropriate, regardless of the referee's recommendation. *Id.*

¶48  We agree with the referee that Attorney Kovac defaulted in failing to answer the complaint or otherwise join issue despite repeated opportunities to do so. As the referee correctly noted, SCR 22.15(1) provides that if the respondent has not filed a timely answer to an OLR complaint, "the referee may hear any motions, including a motion for default, at the scheduling conference." Further, a referee has the authority of a circuit court judge in a civil action pursuant to SCR 22.16(1), such that the general rules of civil procedure apply to disciplinary proceedings. Pursuant to WIS. STAT. § 806.02(1)-(2), a default judgment is authorized based on the respondent's failure to timely answer or file a responsive pleading upon motion of the opposing party.

¶49  Pursuant to SCR 22.14(1), Attorney Kovac was required to file an answer within 20 days of service of the complaint. Attorney Kovac acknowledged on August 19, 2024, that he was served with the complaint

and did not timely file an answer. The OLR filed its motion for default judgment on October 29, 2024, after giving Attorney Kovac over a one-month extension to answer. Attorney Kovac did not file an answer within the extended deadline and did not request any additional extension from the OLR.

¶50    The referee adjourned the November 6, 2024 scheduling conference to December 11, 2024, "to allow Respondent to submit a written response to the Complaint." Attorney Kovac failed to file a formal answer or respond to the motion for default judgment. When the referee again adjourned the scheduling conference until January 3, 2024, to allow the parties to "submit their written arguments addressing OLR's Motion for Default Judgment," Attorney Kovac again failed to respond. Attorney Kovac's only response was to email the referee indicating that he contested the complaint and that he sustained an injury on December 21 or 22, 2024, and "had taken pain medication that had impaired his ability to concentrate on legal work." However, this email was sent on January 6, 2024—three days after the deadline to respond had passed.

¶51    Attorney Kovac clearly was in default for failing to timely answer. He failed to take advantage of repeated extensions and did not meaningfully join issue or contest the motion for default judgment. Attorney Kovac's claims of medical issues were vague, unsubstantiated, and according to Attorney Kovac's own representations at the time, did not "impair [his] ability to respond to the current OLR complaint."

¶52    As the referee recognized, an additional requirement for a default judgment is that the underlying complaint state a valid claim. *See Tridle v. Horn*, 2002 WI App 215, ¶11, 257 Wis. 2d. 529, 652 N.W.2d 418. Here, there can be no genuine dispute that the OLR's detailed complaint against Attorney Kovac meets this requirement. The OLR's allegations amply support the 11 charged counts of misconduct. Thus, we conclude that the referee properly concluded that Attorney Kovac was in default and properly granted the OLR's motion for default judgment.

¶53    Having been found in default for failure to answer, Attorney Kovac necessarily admitted all of the allegations in the complaint were true. *In re Disciplinary Proceedings Against Runyon*, 2020 WI 74, ¶12, 393 Wis. 2d 612, 948 N.W.2d 62 (holding that "the factual allegations of the OLR's complaint may be taken as true" when they were "deemed admitted by

Attorney Runyon's failure to answer"); *In re Disciplinary Proceedings Against Scholz*, 2025 WI 13, ¶63, 415 Wis. 2d 474, 19 N.W.3d 550 (same).

¶54 Based on those admissions, we agree with the referee that the facts alleged in the complaint establish that Attorney Kovac committed each count of misconduct alleged. *See Scholz*, 415 Wis. 2d 474, ¶64 ("When an attorney admits the allegations in the complaint, that normally constitutes clear, satisfactory, and convincing evidence that the attorney committed all of the counts of misconduct alleged in the complaint.").

¶55 That said, and despite the fact that the court is reviewing this matter pursuant to SCR 22.17(2), we pause briefly to address an issue Attorney Kovac attempted to raise in his motion to reinstate his appellate rights for this matter—namely, his assertion that he had a "good defense on the merits" to the allegations concerning his failure to present an alibi defense in the R.G. matter. Specifically, Attorney Kovac asserted that both the OLR and the judge presiding over the *Machner* hearing disregarded a "lengthy memo" that the State filed during the postconviction proceedings that purportedly "refut[ed] the credibility of the proposed alibi" and that Attorney Kovac contended both the judge and the OLR were "unaware of."

¶56 The memo to which Attorney Kovac refers is the State's post-hearing brief in response to the defendant's motion for postconviction relief in the R.G. matter.[29] In that brief, the State argued that Attorney Kovac was not ineffective in failing to call R.G.'s two alibi witnesses, in part, because Attorney Kovac testified that he "ha[d] no independent recollection of conversations with" them and there was a possibility that these two witnesses had conspired after-the-fact to manufacture the alibi defense.

¶57 In other words, Attorney Kovac's supposed meritorious defense is entirely dependent upon his own testimony where he purported to not recall meeting with the two potential witnesses who testified that they told Attorney Kovac that R.G. was with them in another city at the time of the homicide. As the OLR rightly pointed out in response to Attorney Kovac's motion, the postconviction court already rejected Attorney Kovac's argument when it concluded that he provided

---

[29] The court notes that Attorney Kovac failed to provide this document to the court as part of his appellate motions.

constitutionally deficient assistance of counsel in failing to call these two alibi witnesses, stating "I find that the failure to call these alibi witnesses fell below the standard of care. I don't think any reasonable trial attorney could have adopted that trial strategy in this case with Mr. [R.G.]'s theory of defense." The postconviction court also assessed Attorney Kovac's testimony on this topic to be "not super reliable," and noted how Attorney Kovac's testimony on this topic was "vague" or "nonexistent" despite being able to clearly recall other matters.

¶58     Despite the postconviction court's clear consideration of the State's argument and adverse credibility determinations against Attorney Kovac, Attorney Kovac stated to this court: "Had the evidence in that document been offered in evidence on the credibility of the alibi, the *Machner* hearing judge would never have found that Respondent should have used that alibi at trial."

¶59     In short, Attorney Kovac's statements in his motion to reinstate his appellate rights in this matter are demonstrably false. The document that he contends was never "offered into evidence" and of which he asserted that the postconviction court and the OLR were "completely unaware of," was, in fact, filed into the record in R.G.'s postconviction proceeding. The record conclusively demonstrates that the postconviction court found Attorney Kovac's testimony in that proceeding to be incredible and flatly rejected the very argument he attempts to raise before this court. Attorney Kovac's purported "good defense on the merits" is, in fact, wholly devoid of legal merit, and borders on frivolousness.

¶60     We include this discussion because Attorney Kovac's conduct before this court continues the pattern of misconduct that is the subject of this proceeding and bears upon the appropriate sanction.

¶61     In assessing the appropriate sanction for proven misconduct, this court considers "[t]he seriousness, nature, and extent of the misconduct; the level of discipline needed to protect the public; the need to impress upon the attorney the seriousness of the misconduct; and the need to deter other attorneys from similar misconduct," *In re Disciplinary Proceedings Against DeLadurantey*, 2023 WI 17, ¶52, 406 Wis. 2d 62, 985

N.W.2d 788, as well as various potential aggravating[30] and mitigating[31] factors set forth in the ABA Standards for Imposing Lawyer Sanctions (ABA Standards). Moreover, this court generally follows a policy of "progressive discipline, especially in cases involving a pattern of similar misconduct." *In re Disciplinary Proceedings Against Nussberger*, 2006 WI 111, ¶27, 296 Wis. 2d 47, 719 N.W.2d 501.

¶62    We agree with the referee's assessment of the pertinent considerations stated above and aggravating factors in this case. We further agree that revocation of Attorney Kovac's license to practice law is the only appropriate sanction in this case—particularly given Attorney Kovac's long disciplinary history and pattern of similar misconduct.

¶63    The referee summarized the seriousness of Attorney Kovac's misconduct as follows, focusing on the harm to Attorney Kovac's clients:

> Kovac committed 11 counts of misconduct involving two separate clients. Both clients faced extremely serious criminal charges (one client also had a civil case, in which Kovac also committed misconduct . . .). In both criminal cases, Kovac failed to investigate and failed to present strong evidence on behalf of his clients. One client received consecutive 15-year prison terms for two counts of sexual assault. . . . The other client received a life sentence (for intentional homicide) and a consecutive 10-year sentence. . . .

---

[30] Aggravating factors include: prior disciplinary offenses; dishonest or selfish motive; pattern of misconduct; multiple offenses; bad faith obstruction of the disciplinary proceeding; submission of false evidence or statements or other deceptive practices; refusal to acknowledge the wrongful nature of the conduct; vulnerable victims; substantial experience practicing law; indifference to restitution; and illegal conduct. *See* ABA Standards 9.22.

[31] Mitigating factors include: the absence of prior discipline; absence of dishonest or selfish motive; personal or emotional problems; good faith effort to make restitution; cooperating with disciplinary authorities; inexperience; character or reputation; physical or mental disability or chemical dependency; delay in the proceedings; imposition of other penalties; remorse; and remote prior offenses. *See* ABA Standards 9.32.

> In both cases, Kovac's lack of diligent trial preparation contributed to convictions and the imprisonment [of] his clients. . . . In both cases, Kovac's misconduct after sentencing delayed the post-conviction process that eventually resulted in the convictions being vacated. . . .

¶64 Additionally, the 11 counts of misconduct in this case demonstrate a clear pattern of incompetence, lack of diligence, failure to communicate, and complete and utter disregard for court deadlines and the basic duties a licensed attorney in this state owes to clients and the court system. Taking a step back, the allegations in the OLR's complaint demonstrate that Attorney Kovac failed in his professional duties at nearly every stage of his representation of M.M. and R.G. in their respective cases—from failing to timely enter into written fee agreements, failure to communicate as to the status of the matters, failure to consult as to the objectives of representation, failing to diligently pursue his clients' interests, failing to provide competent representation, failure to protect his clients' interests upon termination of representation, and failing to cooperate with the OLR.

¶65 The specific instances of misconduct include multiple instances by Attorney Kovac of failing to communicate as to the status of the cases, failing to investigate and pursue viable defenses, failure to gather or preserve evidence, failure to call needed witnesses, not informing the client of trial strategy, failure to adequately prepare for trial, failure to timely file notices and motions, failure to respond to discovery and a dispositive motion, failure to protect his clients' postconviction rights, failure to cooperate with his own investigator, failure to cooperate with successor counsel, and failure to timely respond to the OLR's requests for information and documents and doing so only after his license had been suspended. Indeed, the level of professional incompetence in this case is nothing short of astounding. At every stage of the underlying cases, Attorney Kovac acted in a manner that was "too little, too late."

¶66 And the harm in this case was not just to Attorney Kovac's clients, to whom he provided utterly inept representation, but also to the judges, successor counsel, prosecutors, the State Public Defender, and opposing counsel—all of whom were affected by the fallout from Attorney Kovac's mishandling of M.M. and R.G.'s cases. Not only that, but as a result of M.M.'s and R.G.'s convictions being vacated, the cases started anew, causing further delay and confusion to the victims in each of the criminal

matters. And in M.M.'s civil case, Attorney Kovac wasted everyone's time for nearly a year as he "did nothing" to remedy his misnaming of the principal defendant in that case.

¶67     In short, the nature of the misconduct in this case is serious indeed, and the need to protect the public self-evident. And, as discussed below, given that Attorney Kovac's misconduct in this case follows a pattern of similar misconduct in previous cases, there is a clear need to impress upon him the seriousness of his misconduct and also to deter other attorneys from similar misconduct.

¶68     Additionally, there are a number of aggravating factors present in this case. Attorney Kovac has a lengthy disciplinary history, recounted above, and substantial experiencing practicing law. The multiple instances of misconduct in the present case reveals a pattern of misconduct, which is also consistent with a past pattern of misconduct for which Attorney Kovac has been disciplined. That is, Attorney Kovac provides incompetent representation, fails to act diligently to protect his clients' interests, fails to communicate with them, fails to cooperate with successor counsel, and ignores inquiries from the OLR until his license is threatened.

¶69     The referee in one of Attorney Kovac's previous disciplinary cases characterized Attorney Kovac's practice of law as follows, an observation this court previously quoted with approval:

> The respondent's misconduct is serious in nature. He intentionally neglects clients. He intentionally fails to cooperate with successor counsel. He intentionally fails to cooperate with OLR investigations. He ignores orders issued by courts, including appellate courts.

> By my count, respondent has now failed to cooperate with at least six OLR investigations of misconduct. His failure to cooperate is not an oversight or a mistake, but rather an intentional course of misconduct in defiance of his obligations as a Wisconsin lawyer. Also, he has now failed to file an answer in two disciplinary cases involving three separate grievances.

> When I review respondent's behavior in the past two public reprimands with his conduct in this case, I note another

troublesome pattern. Respondent, during his representation of clients and in his handling of grievances, takes a course of delay, excuses, and misrepresentations. Repeated promises to clients, courts, OLR, and referees are simply never complied with. Instead, they are replaced with new promises to clients, courts, OLR, and referees.

In the present case, respondent was given multiple chances to file an answer. Rather than file an answer, he would appear at my office after deadlines had passed and essentially ask for more time. When he would be given additional time, he would again fail to respond. In the present case, he filed a late letter indicating he wanted to be heard on mitigating circumstances, but never follows through with any efforts to secure a hearing that was offered to him on the subject of mitigating circumstances.

*In re Disciplinary Proceedings Against Kovac*, 2016 WI 62, ¶17, 370 Wis. 2d 388, 881 N.W.2d 44. The referee in that matter further remarked: "I fear that such conduct will continue and will cause harm in the future to respondent's clients." *Id.*

¶70    That prediction certainly has come to pass, as two clients were convicted, in part due to Attorney Kovac's shortcomings, and their convictions then overturned. And the allegations in the OLR's complaint in this matter demonstrate that Attorney Kovac has not heeded the quoted criticism of his modus operandi. The record here demonstrates that Attorney Kovac continually neglects clients, ignores court orders and deadlines, fails to cooperate with successor counsel, and fails to cooperate with the OLR.

¶71    Attorney Kovac continued his pattern of ineptitude as he litigated this case. He failed to timely respond to the OLR's complaint and motion for default judgment. He failed to timely commence an appeal from the referee's report and recommendation. After the court dismissed his untimely appeal, Attorney Kovac filed motions to reinstitute his appeal rights or remand the matter to the referee—motions that the OLR accurately characterized as "substantively baseless." And, as we recounted above, the only defense to the merits that Attorney Kovac attempted to assert contained assertions that were materially false and misrepresented what had occurred in R.G.'s postconviction proceedings.

¶72    Given the nature and seriousness of the misconduct in this case, the need to protect the public, the need to deter other attorneys from similar misconduct, and the need to impress upon Attorney Kovac the seriousness of his misconduct, no sanction short of revocation is appropriate here—particularly given Attorney Kovac's lengthy disciplinary history and continued pattern of misconduct from prior disciplinary cases.

¶73    While no two disciplinary matters are identical, our past precedent supports our decision to revoke Attorney Kovac's license to practice law. For instance, in *Gegner*, 373 Wis. 2d 192, ¶15, this court granted a petition for consensual license revocation where the respondent attorney had "engaged in a widespread pattern of serious professional misconduct that has harmed his clients." The attorney in that matter "would fail to communicate with his clients and would fail to perform the legal work and services that were necessary." *Id.*, ¶11. The attorney "would at times misrepresent the status of his work to both the clients and court" and engaged in an "obstinate failure to cooperate with OLR's investigations[.]" *Id.* This case involves a similar pattern of misconduct and "obstinate failure to cooperate with" the OLR.

¶74    Likewise, in *In re Disciplinary Proceedings Against Blessinger*, 2017 WI 107, 378 Wis. 2d 539, 905 N.W.2d 122, this court granted a petition for consensual license revocation based on the respondent attorney's "repeated pattern of serious misconduct" including "multiple instances of . . . failing to diligently represent clients; failing to properly communicate with clients; failing to abide by fee agreement and trust account rules . . . ; and[ ] failing to cooperate with the OLR's attempt to investigate his conduct." *Id.*, ¶34. This court remarked that the attorney in that matter "is either unwilling or unable to conform his conduct to the standards that are required to practice law in this state." *Id.* Further, this court remarked that "[a]nything less than a revocation of his law license would unduly depreciate the seriousness of his misconduct, fail to protect the public and the court system from further misconduct, and inadequately deter similar misbehavior by other attorneys." *Id.* The same is true here. *See also In re Disciplinary Proceedings Against Goldmann*, 2018 WI 89, ¶9, 383 Wis. 2d 472, 915 N.W.2d 171 (revocation appropriate where attorney "has engaged in a widespread pattern of serious professional misconduct that has harmed his clients and tarnished the profession.").

¶75    To put it bluntly, Attorney Kovac is a disgrace to the profession and a danger to the public. He should not be allowed to continue practicing law.

¶76    Finally, we agree with the referee that we should follow our general policy under SCR 22.24(1m) of imposing the full costs of this proceeding on Attorney Kovac, which total $6,816.88 as of March 11, 2025. There are no extraordinary circumstances present that would justify departing from the court's standard practice of imposing full costs on the respondent attorney. *See In re Disciplinary Proceedings Against Lister*, 2015 WI 8, ¶47, 360 Wis. 2d 330, 858 N.W.2d 687.

¶77    IT IS ORDERED that the license of Attorney Peter J. Kovac is revoked, effective the date of this order.

¶78    IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney Peter J. Kovac shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $6,816.88 as of March 11, 2025.

¶79    IT IS FURTHER ORDERED that Attorney Peter J. Kovac shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.

¶80    IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. *See* SCR 22.28(3).

IN THE MATTER OF DISCIPLINARY PROCEEDING AGAINST
ATTORNEY PETER J. KOVAC
ANNETTE KINGSLAND ZIEGLER, J., concurring.

ANNETTE KINGSLAND ZIEGLER, J., with whom JILL J. KAROFSKY, C.J., REBECCA GRASSL BRADLEY, BRIAN K. HAGEDORN, and JANET C. PROTASIEWICZ, JJ., join, concurring.

¶81 I concur in the court's order revoking Attorney Kovac's license to practice law in Wisconsin. I write separately to point out that in Wisconsin the "revocation" of an attorney's law license is not truly revocation because the attorney may petition for reinstatement after a period of five years. *See* SCR 22.29(2). I believe that when it comes to lawyer discipline, courts should say what they mean and mean what they say. We should not be creating false perceptions to both the public and to the lawyer seeking to practice law again. *See In re Disciplinary Proceedings Against Moodie*, 2020 WI 39, 391 Wis. 2d 196, 942 N.W.2d 302 (Ziegler, J., dissenting). And, as I stated in my dissent to this court's order denying Rule Petition 19-10, *In the Matter of Amending Supreme Court Rules Pertaining to Permanent Revocation of a License to Practice Law in Attorney Disciplinary Proceedings*, I believe there may be rare and unusual cases that would warrant the permanent revocation of an attorney's license to practice law. *See* S. Ct. Order 19-10 (issued Dec. 18, 2019) (Ziegler, J., dissenting).

¶82 For the foregoing reason, I concur.

1